McCONAUGHEY, FOR HIMSELF AND OTHERS, EMPLOYEES OF THE PANAMA CANAL AND OF THE PANAMA RAILROAD COMPANY, *v.* MOR- ROW, GOVERNOR OF THE PANAMA CANAL, ET AL.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 48.  Submitted October 4, 1923.—Decided November 12, 1923.

1. In a suit in the United States District Court for the Canal Zone to restrain the Governor and other officials of the Panama Canal from carrying out an order of the President, upon the ground that plaintiffs will thereby be deprived of personal or property rights contrary to the federal laws and Constitution, an objection that the suit is in effect against the United States does not raise a question of the jurisdiction of the trial court as a federal court reviewable directly by this Court under Jud. Code, § 238, as amended January 28, 1915.  P. 41.

2. The Act of September 21, 1922, providing that review by the Circuit Court of Appeals, Fifth Circuit, of judgments of the District Court for the Canal Zone shall include all questions of jurisdiction, was expressly inapplicable to cases then pending in the former court, and, by implication, does not affect a case which had passed through that court and was pending here on appeal from its judgment at the date of the act.  P. 42.

3. The Panama Canal Act of August 24, 1912, in declaring " That all laws, orders, regulations, and ordinances adopted and promulgated in the Canal Zone by order of the President for the government and sanitation of the Canal Zone and the construction of the Panama Canal are hereby ratified and confirmed as valid and binding until Congress shall otherwise provide," refers to regulations, etc., rising to the dignity of laws, for the purposes named, and did not divest the President of power to revoke previous ad-

ministrative orders and regulations, such as those allowing free quarters, fuel, electric current, water, etc., to government employees._ P. 43.

4. Under the Act of March 4, 1907, debts owing the Government of Panama. by government employees were deductible from their pay.  P. 49.

279 Fed. 617, affirmed.  ·

APPEAL from a decree of the Circuit Court of Appeals affirming a decree of the United States District Court for the Canal Zone, which dismissed the bill in a suit of a government employee in the Zone to restrain the Governor and other officials of the Canal from effectuating an order of the President making them chargeable with rent, fuel, etc.

Mr. *Harry A. Hegarty* and Mr. *John N. Breen* for appellant.

Mr. *G. H. Martin* for appellees.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

This was a complaint filed in the United States District Court for the Canal Zone by Harvey McConaughey in behalf of himself and of all other Government employees occupying Government quarters in the Zone, against the Governor, Auditor and Paymaster of the Panama Canal, charging that the defendants were about to make a charge against complainants for rent, fuel, electric current, water and services in connection with their quarters on and after January 1, 1922, and in case of non-payment to deduct the same from their lawful pay or to oust them from their quarters, all in pursuance of and compliance with an order of the President of December 3, 1921, issued without legal authority and, invalid because in conflict with the Constitution and laws of the United States.

The defendants made a motion to quash the order to show cause which had been issued against them and to dismiss the bill, because the case was one in effect against the United States, and because it sought to control the executive discretion vested by law and the Constitution in the President and his subordinates. The court sustained the motion, finding that the order of December 3, 1921, was within the legal authority of the President and under that order the defendants had the discretion to adopt the regulations, enforcement of which it was sought in the bill to enjoin.

An appeal was taken to the Circuit Court of Appeals for the Fifth Circuit under § 9 of the Act of Congress of August 24, 1912, c. 390, 37 Stat. 560, 566. A motion to dismiss the appeal was made in the Circuit Court of Appeals, on the ground that it was based solely on a question of jurisdiction and therefore should have come directly to this Court on a certificate of jurisdiction under § 238 of the Judicial Code, as amended January 28, 1915, c. 22, 38 Stat. 804. The Circuit Court of Appeals held that the case did not present a question of jurisdiction of the District Court within § 238, that that section applied only to a question of the court's jurisdiction of the parties or subject matter as a federal court, and that no such issue had been raised here.

We agree with the Circuit Court of Appeals in this view. There is no doubt of the general jurisdiction of the District Court of the Canal Zone as a court of general jurisdiction to hear a suit brought by one resident of the Zone against another upon whom personal service can be had, in respect of any property or personal right of the plaintiff. The question here was whether the court could grant an equitable remedy against an officer of the Canal when, as asserted, it would in effect be an injunction against the United States. This was not a question of jurisdiction appealable direct to this Court. As was said

in *Fore River Shipbuilding Company* v. *Hagg,* 219 U. S. 175, 178:

"This court has had frequent occasion to determine what is meant in the statute providing for review of cases in which the jurisdiction of the court is in issue, and it has been held that the statute means to give a review, not of the jurisdiction of the court upon general grounds of law or procedure, but of the jurisdiction of the court as a Federal court." See also *Louisville Trust Company* v. *Knott,* 191 U. S. 225; *Bache* v. *Hunt,* 193 U. S. 523.

By the Act of September 21, 1922, c. 370, § 3, 42 Stat. 1004, 1006, amending § 9, it is provided that review by the Circuit Court of Appeals of the judgments and decrees of the District Court of the Canal Zone shall include all questions of jurisdiction, thus making § 238 of the Judicial Code thereafter inapplicable to cases coming up from that court. The amendment, however, by its terms did not affect cases then pending in the Court of Appeals and provided that they were to be disposed of as if it had not been enacted. The present case was pending in this Court at the time, and we can not suppose, in view of the saving clause as to cases which had reached the Circuit Court of Appeals, that the act was intended to have any effect upon cases which had passed through the Circuit Court of Appeals and had been lodged here. We must deal with this case, therefore, as if the amendment of September 21, 1922, had not been passed. Under either statute, however, the whole case is before us on the sufficiency of the complaint presented below by the motion of the defendants to dismiss it.

The claim of the appellant is that he and those for whom he sues were employees of the Government engaged in and about its work in respect to the construction and operation of the Canal, that while the Isthmian Canal Commission was carrying on this task under the President, it had been its policy to furnish Government employees

quarters free of rent, that this policy was finally embodied in a regulation of the Commission effective April 1, 1907, as follows:

"Whenever practicable and in the best interest of the service, an employee will be provided with such quarters on the Isthmus as may be available from time to time ", and that thereafter, by proper orders, free fuel, electric current and other service were allowed to employees in Government quarters.

These orders and regulations were in force when the Panama Canal Act was passed August 24, 1912, c. 390, 37 Stat. 560, containing as its second section the following:

"That all laws, orders, regulations, and ordinances adopted and promulgated in the Canal Zone by order of the President for the government and sanitation of the Canal Zone and the construction of the Panama Canal are hereby ratified and confirmed as valid and binding until Congress shall otherwise provide."

Appellant contends that as all the regulations of the Commission were authorized by the President and unless revoked were to be taken as confirmed by him, they were by the § 2 just quoted made into an act of Congress and thereafter could not be revoked or amended save by another act of Congress otherwise providing. Hence, it is claimed that the Commission's regulation of April 1, 1907, with its succeeding orders on the same subject, has all the force of an act of Congress not to be amended by the President, and that by its terms all employees are entitled to free quarters and to the other privileges.

The force to be given to this claim depends primarily on the proper construction of § 2 of the Panama Canal Act of 1912, and that needs for its reasonable interpretation a short consideration of its legislative history.

On June 28, 1902, c. 1302, 32 Stat. 481, Congress passed a law entitled "An Act To provide for the construction of a canal connecting the waters of the Atlantic

and Pacific oceans", and known as the Spooner Act. It authorized the purchase of the rights of the New Panama Canal Company of France in the uncompleted canal and its holdings of the stock of the Panama Railroad Company and of the right of way from the government of Colombia, and enabled and directed the President to build and complete the canal, and for this purpose gave him authority to employ such persons as he might deem necessary and to fix their compensation. The act created a Commission through whom the President was to do the work, and provided for the issue of bonds to pay for the purchase and construction provided in the act. Thereafter Panama revolted from Colombia and was recognized by the United States, and on November 18, 1903, made a treaty with the United States (33 Stat. 2234) granting a right of way and transferring perpetual control of the Canal Zone to the United States for the construction of the Canal, which the United States undertook to build and operate. By Act of April 28, 1904, c. 1758, 33 Stat. 429, Congress provided for the payments to be made under the Treaty and the contract with the French Panama Canal Co., authorized the President, after such payments, to take possession of the territory conveyed by the treaty for canal purposes, and established the Zone conveyed as "The Canal Zone." Section 2 provided as follows:

"That until the expiration of the Fifty-eighth Congress, unless provision for the temporary government of the Canal Zone be sooner made by Congress, all the military, civil, and judicial powers as well as the power to make all rules and regulations necessary for the government of the Canal Zone and all the rights, powers, and authority granted by the terms of said treaty to the United States shall be vested in such person or persons and shall be exercised in such manner as the President shall direct for the government of said Zone and maintaining and protecting the inhabitants thereof in the free enjoyment of their liberty, property, and religion."

Under this act, the President took possession of the
Zone and directed that the Canal should be constructed
and the Zone governed by him through the Panama Canal
Commission under the supervision of the Secretary of
War.   Letter of President to Secretary of War, May 9,
1904.   Executive Orders relating to Panama Canal, page
20.   Executive Order dated November 17, 1906.   *Idem,*
page 55.   A government was organized, a *modus vivendi*
was agreed to with the government of Panama, and the
construction of the Canal was carried on.   A Governor of
the Canal was appointed, courts were established and com-
plete rules and regulations having the force of law were
duly adopted and enforced.   Law and order were thus
maintained, persons violating these regulations were
prosecuted and convicted, and the construction of the
Canal was much aided by the governmental control exer-
cised by the same body that carried on the great work.
A volume of Canal laws thus enacted and a volume of
Executive Orders relating to the Canal were published by
the Canal authorities.

It will be noted that the second section of the Act of
April 28, 1904, by which the President was authorized to
establish a government in the Canal Zone and was given
legislative power therein, was expressly limited in its
duration to the expiration of the Fifty-eighth Congress,
which occurred on the 4th of March, 1905.   On March
6, 1905, the Secretary of War telegraphed the Governor
of the Canal Zone, " Government of the Canal Zone will
be continued to be administered in obedience to the laws
of the United States in force in that territory, the Execu-
tive Orders heretofore issued, and the laws of the Canal
Zone enacted by the Isthmian Canal Commission during
the period the Commission was authorized under Act of
Congress approved April 28, 1904, to exercise the power
of legislation."   (Treaties and Acts of Congress Relating
to Panama Canal, Annotated, page 35, note).   Between

1905 and 1912, when the Canal Act already cited was passed, there was no express legislation looking to the continuance of the powers of the President under the Act of April 28, 1904. The existence of the Government of the Canal Zone after March 4, 1905, was, however, recognized in appropriations for the payment of its employees and other of its expenses for 1906 (34 St. 762), for 1907 (34 St. 1370), for 1908 (35 St. 386), for 1909 (35 St. 1026), for 1910 (36 St. 772) and for 1911 (36 St. 1450). On January 21, 1907, the Secretary of War asked the Attorney General whether the power of the President to make laws in the Zone, conferred in the Act of April 28, 1904, had ceased at the close of the Fifty-eighth Congress, so that no further legislation could be adopted or existing legislation modified. The answer was that the provision in the law of 1904 was merely declaratory of what would have been the authority and duty of the President growing out of the Treaty and the Spooner Act, even if the Act of 1904 had not been enacted, that new legislation might be adopted by the President, and that Congress' acquiescence in, and approval of, the Government as carried on could be inferred from its appropriations to pay the Canal Government's expenses. Opinions of Attorneys General, vol. 26, p. 113. So the government of the Zone went on. Nevertheless, its legality was from time to time questioned, and on March 19, 1908, the House of Representatives passed a resolution asking the President that it be informed by what authority of law he exercised the functions of government in the Panama Canal Zone since the expiration of the Fifty-eighth Congress. 42 Congressional Record 3592. This was answered by the President in a message of April 4, 1908 (42 Congressional Record 4387), by stating the same grounds as those contained in the opinion of the Attorney General, already referred to. In his annual message of December 21, 1911 (Messages and Papers of the Presidents, Vol. XVII, pp. 7681, 7687).

the President, in announcing the probable completion of the Canal in 1913, said:

" The fact is that today there is no statutory law by authority of which the President is maintaining the government of the Zone. Such authority was given in an amendment to the Spooner Act, which expired by the terms of its own limitation some years ago. Since that time the government has continued, under the advice of the Attorney General that, in the absence of action by Congress, there is necessarily an implied authority on the part of the Executive to maintain a government in a territory in which he has to see that the laws are executed. The fact that we have been able thus to get along during the important days of construction without legislation expressly formulating the government of the Zone, or delegating the creation of it to the President, is not a reason for supposing that we may continue the same kind of government after the construction is finished. The implied authority of the President to maintain a civil government in the Zone may be derived from the mandatory direction given him in the original Spooner Act, by which he was commanded to build the Canal; but certainly, now that the Canal is about to be completed and to be put under a permanent management, there ought to be specific statutory authority for its regulation and control and for the government of the Zone, which we hold for the chief and main purpose of operating the Canal."

From this review of the history of the Canal Zone government, the purpose of Congress in enacting the second section of the Canal Act of 1912 must be apparent. There had been no lack of authority in the President after the Spooner Act to build the Canal and employ those who were to do the work. The defect was in the lack of definite authority to create a government, make laws and enforce them, and this had to be spelled out. Congress

deemed it wise, therefore, as it certainly was, to ratify and confirm, everything two Presidents had done in carrying on government and making and enforcing law in the Zone. It is in the light of this that the second section must be interpreted. The section confirms " all laws, orders, regulations, and ordinances adopted and promulgated in the Canal Zone by order of the President for the Government and sanitation of the Canal Zone and the construction of the Panama Canal." This means laws needed and enacted to constitute the government, promote sanitation and generally aid the construction of the Canal. It was intended to ratify that as to the validity of which doubt had been expressed. It was only those regulations which rose to the dignity of laws which required ratification. To give the construction to § 2 contended for by appellant would lead to a most absurd result in view of its closing words which ratified and confirmed such laws, rules, regulations and ordinances " *as valid and binding until Congress shall otherwise provide.*" This would be to put innumerable administrative orders and rules adopted in the work, which were necessarily subject to change from time to time as conditions changed and the work progressed, into a strait-jacket, entirely inconsistent with the broad authority of the President granted in the Spooner Act and renewed in § 4 of the same Canal Act of 1912, as follows:

" That when in the judgment of the President the construction of the Panama Canal shall be sufficiently advanced toward completion to render further services of the Isthmian Canal Commission unnecessary the President is authorized by Executive order to discontinue the Isthmian Canal Commission, which, together with the present organization, shall then cease to exist; and the President is authorized thereafter to complete, govern, and operate the Panama Canal and govern the Canal Zone, or cause them to be completed, governed, and oper-

ated, through a governor of the Panama Canal and such other persons as he may deem competent to discharge the various duties connected with the completion, care, maintenance, sanitation, operation, government, and protection of the canal and Canal Zone."

In 1914 the President discontinued the Commission, and appointed a Governor. On January 15, 1915, he issued an executive order announcing that the policy of furnishing quarters, fuel and electric current free to all employees was revocable, conferred no vested right upon employees and its future revocation would not be made the basis for increasing compensation. Ex. Order No. 2118—Executive Orders Relating to Panama Canal, Annotated, page 207. Certainly, after this, the appellant can not claim that he and those on whose behalf he sues were misled into accepting employment on the faith of the maintenance of these privileges. Six years thereafter the President made the order here complained of, directing that the charges imposed therein upon employees should be deducted from their pay. The right to deduct from their pay debts owing to the Government by Panama employees was expressly conferred by the eighth section of the Act of March 4, 1907, c. 2918, 34 Stat. 1371. The President's order was therefore valid in all respects.

The Circuit Court of Appeals held that the so-called regulation of 1907 in its form and language was only a declaration of revocable policy and on its face was not a rule capable of being stiffened into binding legislation under § 2 of the Canal Act. We have, however, preferred to put our conclusion on the broader ground that the subject matter of the regulation was not covered by the section.

The motion to dismiss was properly granted by the District Court and its decree was properly affirmed by the Circuit Court of Appeals.

*Affirmed.*