## NELSON v. JADRIJEVICS.
### No. 6351.

Circuit Court of Appeals, Fifth Circuit.
May 24, 1932.

P. M. Milner, of New Orleans, La., and L. S. Carrington, of Ancon, Canal Zone, for appellant.

Chauncey P. Fairman, of Cristobal, Canal Zone, for appellee.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

Josef Jadrijevics, the plaintiff below, recovered judgment at law in the District Court of the United States for the Canal Zone against H. B. Nelson, doing business under the name of H. B. Nelson Construction Company, for a personal injury received while employed by Nelson, and Nelson appeals.

Shortly after suit was filed a motion was made to require Jadrijevics to give bond for costs as a nonresident plaintiff, in reply to which Jadrijevics under oath and supported by his attorney's certificate set up his helpless and impoverished condition, rendering it impossible to give bond or pay costs, and prayed to be permitted to prosecute his suit in forma pauperis. The court denied the motion to require bond, and granted leave to proceed in forma pauperis under section 819 of the Code of Civil Procedure of the Canal Zone. This action is assigned as error. On March 22, 1907, President Roosevelt promulgated as of force in the Canal Zone the Code of Civil Procedure, section 819 of which reads: "Any judge or clerk of any circuit or district court may authorize any person to sue as a pauper in their respective courts, when he files an affidavit setting forth facts showing that he has good cause of action, and that he is unable to procure a bond when such bond is required, accompanied by a certificate of a practising attorney in good standing that the plaintiff has fully stated the facts of his claim to him and that the attorney believes he has a good cause of action, and that he further believes the plaintiff is unable to pay the costs of the action or procure bond." Section 2 of the act of August 24, 1912, 37 Stat. p. 561 (48 USCA § 1309), enacted that all laws, orders, regulations, and ordinances promulgated in the Canal Zone by order of the President for the government of the Zone are ratified and confirmed as valid and binding until Congress shall otherwise provide. Section 8 (37 Stat. p. 565) dealt with the substitution of the present district court for the prior courts, and declared: "The rules of practice in such district court shall be prescribed or amended by order of the President." Section 9 (37 Stat. 565) provided further: "All existing laws in the Canal Zone governing practice and procedure in existing courts shall be applicable and adapted to the practice and procedure in the new courts." The amending Act of September 21, 1922, 42 Stat. 1004, 1005, § 2 (48 USCA § 1344), gives the President the express power also to repeal rules of practice. Section 819 of the Code of Procedure is applicable to this case if not repealed by the President under his rule-making powers. It is argued that the Code of Civil Procedure is a law adopted by Congress by the act of August 24, 1912, which can be altered only by Congress, and that the President's power to make, amend, and repeal rules of practice is to be exercised in subordination to the Code. See McConaughey v. Morrow, 263 U. S. 39, 44 S. Ct. 78, 68 L. Ed. 153; 34 Op. Attys. Gen. 475. We find no occasion to decide the point, because no rule subsequently promulgated by the President expressly repeals section 819, and none now in force is in such irreconcilable conflict with it as to raise a question of implied repeal. Rule 7 promulgated by executive order of January 9, 1920, on the subject of suits in forma pauperis provided that any citizen of the United States might prosecute or defend his suit without prepaying costs or giving bond upon making a stated oath. The right thus given to the citizen to proceed without the consent of the judge does not nullify the authority given the judge by section 819 to permit any person to sue as a pauper upon the conditions there specified. Each provision may have application in circumstances appropriate to it. If it be assumed that this plaintiff is not a citizen but an alien, the judge had pow-

er under section 819 to permit him to sue as a pauper. Nor is section 819 repugnant to the several orders providing for the prepayment of or giving bond for costs, for they establish a general rule to which suits in forma pauperis are an exception. This is expressly recognized in rule 27 of the order of December 20, 1921. Rule 19 of the order of July 28, 1925, under which defendant's motion for bond was made, is permissive only, and gives the defendant no absolute right to have the bond. It reads: "The court may at any time before trial require a non-resident plaintiff to file an undertaking for costs. The defendant may at any time move for security for costs and when the motion is made the nonresidence must be shown by affidavit unless it is admitted or appears upon the papers or from the record." Compare Panama R. Co. v. Curran (C. C. A.) 256 F. 768. Although this plaintiff had not originally sued in forma pauperis, upon satisfying the court according to section 819 that poverty had come upon him and that he had probably a good cause of action, he ought not to be denied a hearing for want of a bond which he is unable to give.

■■■ The petition alleged on information that H. B. Nelson Construction Company, which had employed plaintiff in certain construction work in the Canal Zone, was a corporation or limited company. On the trial it apeared that it was originally a partnership, but, at the time plaintiff was employed and injured, H. B. Nelson, one of the former partners, was conducting the business alone under the old name. The petition was amended over objection to describe the person sued as H. B. Nelson, doing business as H. B. Nelson Construction Company. Section 103 of the Code of Civil Procedure provides: "The Court shall, in furtherance of justice, and on such terms, if any, as may be proper, allow a party to amend any pleading or proceeding and at any stage of the action, in either Circuit Court or Supreme Court, by adding or striking out the name of any party, either plaintiff or defendant, or by correcting a mistake in the name of a party, or a mistaken or inadequate allegation or description in any other respect, so that the actual merits of the controversy may speedily be determined, without regard to technicalities, and in the most expeditious and inexpensive manner." The amendment did not really add a new party, but corrected the mistaken allegation that the person employing the plaintiff was a corporation by stating that person to be an individual named H. B. Nelson, but who did business under the name H. B. Nelson Construction Company. This correction was well within the permission of the liberal rule of practice quoted, provided the person referred to was really before the court. The question is one of service rather than of pleading. The service was made upon W. A. Gillogly, as manager of the company. Nelson himself is asserted in argument not to have been in the Canal Zone. The service was apparently insufficient, but it was never questioned. The defendant appeared by counsel and moved that a cost bond be given, and later pleaded to the merits in all respects, merely denying generally the paragraph which alleged the defendant to be a corporation. Such appearance by counsel cured the want of proper service. After the petition was amended, the same counsel continued to represent the defendant, and now appears on this appeal as representing H. B. Nelson. There has been in these proceedings no hindrance to reaching the merits of the controversy, which is the true aim of all procedure. We find no error therein.

■■ The petition alleged that the defendant employed the plaintiff as a laborer in concrete construction work, and was under duty to furnish him a safe place to work, but in disregard thereof ordered him to clean out the pit under a vertical tower in which a heavy iron bucket for conveying concrete worked up and down, which bucket was negligently lowered on him while he was at work at the pit. His proof showed not that he was sent to clean out the pit, but to remove an iron bar which was in it. By section 102 of the Code of Civil Procedure a variance between pleading and proof shall not defeat an action, but, if material and misleading to the opposite party, is to be cured by an amendment upon just terms, the action being determined upon the facts actually established. The defendant did not claim surprise or prejudice because of the variance, or seek a postponement or other just terms, but moved that a verdict be directed against the plaintiff. To sustain this motion would make the decision of the case depend on the pleadings rather than on the facts established, in the very teeth of section 102. There was also a variance as to the date of the occurrence, the pleading alleging May 17th, and the more reliable proof showing May 10th. Ordinarily, the time alleged is not material, and need not be precisely proven in either a civil or criminal case. No confusion or prejudice whatever appears in this trial because of the date alleged. Peremptory charges based on these variances were properly refused.

Upon the merits we think a new trial ought to be had. The evidence showed that, while plaintiff sometimes had to clean out the pit of the tower, this had been done the evening before he was hurt. On the morning of his injury he was put to work by the foreman, Shine, at unloading a car of cement, and was to assist in mixing concrete, when he would be under the orders of one Brown, who ran one of the two mixers. The other mixer was run by a laborer, who had no authority to give orders. The plaintiff testified that one of the men running a mixer, not stating which one, told him to get the bar from the pit, and that he, knowing how the bucket traveled, reached for the bar while the bucket was at the top of the tower, and was struck by the descending bucket. He did not observe the motion of the cable which ran near him, and was not in sight of the engineer of the hoisting engine. It is conceded that the employer owed him a reasonably safe place in which to work, and, if he was sent to work in the tower, even for a moment, there was a duty to see that the bucket was not lowered upon him. On the other hand if no one having authority from the employer sent him in the tower to work, that was not his place of work at the time, and the duty of furnishing a safe place to work did not apply there. Shine and Brown, who alone could give orders, each denied sending the plaintiff for the bar at all, or knowing that he was about the pit. Plaintiff did not clearly identify the person who he claims did it. The identity and authority of the person who sent him to the tower to work, if any one did, was an important question in determining liability. It was ignored in the instruction of the court, duly excepted to, as follows: "The jury are instructed that it was the duty of the defendant to furnish a reasonably safe place for the defendant to perform the duties for which he was employed, and to exercise ordinary care to prevent injury to him while so engaged, and if you believe from the evidence that at the time and on the occasion in question the defendant failed in the performance of this duty in that it started this machinery in the cement tower or vertical structure in question while the plaintiff was in the act of climbing down into the pit referred to, the hoist or machinery was started without warning to the plaintiff and with such force and violence that the plaintiff was struck and injured as alleged in the complaint; and that the said cement tower and machinery was a dangerous instrumentality and that fact was known to the defendant, or by the exercise of ordinary intelligence could have been known to it, and was unknown to the plaintiff and by the exercise of ordinary care could not have been known by him, the jury should find for the plaintiff, but unless the jury do so believe, they should find for the defendant." The first part of this charge assumes that the plaintiff was at his place of work and in the performance of duties assigned him by his employer when he was struck, although that was a contested question as to which the plaintiff's own evidence was very vague and unsatisfactory. The latter part of the charge seems to be aimed at the defense of assumption of risk, which the defendant had pleaded. It did not clearly define the assumption of risk which would defeat liability, as distinguished from contributory negligence which would reduce damages under article 2357 of the Civil Code elsewhere charged. If one having authority sent plaintiff to get the bar, plaintiff, though aware of the danger from the bucket, might without any fault rely upon his master to give proper orders or signals to the engineman to stay the bucket and make the order safe to execute. If no one having authority sent plaintiff, he could not expect that the bucket would be held; or, if plaintiff, though duly sent, saw that no steps had been taken to stay the bucket, but undertook in the face of obvious danger to get the bar from the pit, he should be held to have assumed the risk and could not recover. If he was, by one having authority, ordered to get the bar, and the bucket was negligently not kept stopped so as to make the order entirely safe of execution, but the plaintiff, by observing the motion of the bucket and of the cable attached to it, might with fair safety have gotten the bar, but negligently failed to observe and pick his time, then contributory negligence proper to reduce but not defeat recovery might be found by the jury. Upon another trial these questions in the light of fuller evidence may be presented more clearly to the jury.

Reversed and remanded for further proceedings not inconsistent herewith.