**UNITED STATES ex rel. DEAN, for and on Behalf of MAHFOOD, v. REYNOLDS, Immigration Inspector in Charge, et al.**

No. 322.

District Court, N. D. Indiana, South Bend Division.

Dec. 28, 1932.

Edwin W. Hunter and George Farage, both of South Bend, Ind., for petitioner.

Oliver M. Loomis, U. S. Atty., and George L. Rulison, Asst. U. S. Atty., both of South Bend, Ind., for respondents.

SLICK, District Judge.

Petitioner, Lizzie Dean, for and on behalf of Mohamed Mahfood, filed her petition for writ of habeas corpus. Writ was issued and return made, including as an exhibit the complete record on the hearing had before an immigration inspector. At the hearing on the return to the writ of habeas corpus, no evidence, except the complete record of the hearing before the inspector, was introduced. Decision in this case is therefore based upon the facts as disclosed by that record.

The petition charges, among other things, that the alien was not accorded a fair hearing before the Immigration Department. The record discloses that the inspector, before whom the charges in the deportation warrant were heard, took an active part in the preliminary investigation against this alien; that he questioned the alien after he was arrested and before he had had an opportunity to consult counsel; that he examined the witnesses called for and in behalf of the government, and cross-examined witnesses called by the alien; that at one time during the hearing he called upon another immigration inspector to preside and he himself was sworn as a witness and testified; that after the conclusion of the hearing he forwarded the record to the proper bureau at Washington, together with his findings of fact and conclusions.

The hearing was conducted under rules of procedure provided by the Department of Labor for deportation of aliens, as follows:

"Paragraph 1. Upon receipt of a telegraphic or formal warrant of arrest the alien shall be taken before the person or persons therein named or described and granted a hearing to enable him to show cause, if any there be, why he should not be deported. Pending determination of the case, in the discretion of the Immigration Officer in charge, he may be taken into custody or allowed to remain in some place deemed by such officer

secure and proper, except that in the absence of special instructions an alien confined in an institution shall not be removed therefrom until a warrant of deportation has been issued and is about to be served.

"Paragraph 2. At the hearing under the warrant of arrest the alien shall be allowed to inspect the warrant of arrest and shall be advised that he may be represented by counsel. The alien shall be required then and there to state whether he desires counsel or waives the same, and his reply shall be entered on the record. If counsel be selected, he shall be permitted to be present during the conduct of the hearing and to offer evidence to meet any evidence presented or adduced by the Government. Objections of counsel shall be entered on the record, but the reasons for such objections shall be presented in accompanying brief. If during the hearing it shall appear to the examining inspector that there exists a reason additional to those stated in the warrant of arrest why the alien is in the country in violation of law, the alien shall be notified that such additional charge will be placed against him, and he shall be given an opportunity to show cause why he should not be deported therefor.

"Par. 3. All records of hearing, in addition to the evidence presented, shall fully set forth the names or name of alien (correctly spelled); place of alien's birth; the province and country within which located; alien's religion; names and location of churches he may have attended; last address of alien in his native country and country in which he is a citizen, and the country in which he has last resided; correct names and addresses of alien's nearest relatives residing in the country of birth and the country of which he is a citizen; and correct names and addresses of all relatives residing in the United States.

"Par. 6. At the close of the hearing the full record shall be forwarded to the Bureau, together with any written argument submitted by counsel and the findings and conclusion of the examining officer in charge, for decision of the Secretary of Labor as to whether a deportation warrant shall issue."

The Supreme and Circuit Courts of Appeal have at various times laid down certain well-defined rules in reference to what constitutes a fair hearing in deportation matters, and a few excerpts from these very able opinions are quoted below:

"It is apparent that the records upon which the decisions of the Secretary of Labor are based are under the provisions of these rules intended to be made in summary, but fair and adequate, fashion by real trials before immigration inspectors. Due process of law requires that these trials should be fair, unbiased, dispassionate. * * * An unfair or otherwise misleading record is as much a fraud upon the law and upon the Secretary of Labor as upon the alien." Colyer v. Skeffington et al. (D. C.) 265 F. 17, at page 30.

"A full and fair hearing on the charges which threaten his deportation and an absence of all abuse of discretion and arbitrary action by the inspector, or other executive officer, are indispensable to the lawful deportation of an alien. * * *

"An alien, as well as a citizen, is protected by the prohibition of deprivation of life, liberty, or property without due process and the equal protection of the law. This principle is universal. It applies 'to all persons within the territorial jurisdiction of the United States without regard to any differences of race, of color, or of nationality.'" Whitfield v. Hanges (C. C. A.) 222 F. 745, 748.

"Deportation is a process of such serious moment that on all controverted matters the executive officers should consider the evidence with close scrutiny." Bilokumsky v. Tod, 263 U. S. 149 at page 156, 44 S. Ct. 54, 57, 68 L. Ed. 221.

A fair hearing is one in which authority is "fairly exercised, that is, consistently with the fundamental principles of justice embraced within the conception of due process of law." Tang Tun v. Edsell, 223 U. S. 673, at page 681, 32 S. Ct. 359, 363, 56 L. Ed. 606.

If a hearing is conducted in such a manner or if practices are indulged in which lead to the conclusion that a denial of justice may have resulted, the hearing is said to be unfair. Bilokumsky v. Tod, supra at page 157 of 263 U. S., 44 S. Ct. 54, 68 L. Ed. 221.

With these fundamental principles in mind, let us consider whether this alien was given a fair hearing as disclosed by the record. The inspector who conducted the hearing, presided during the progress of the case, and ruled on the admissibility of evidence, was the self-same inspector who planned the investigation, procured the evidence, conducted the direct examination of the government's witnesses, cross-examined the alien's witnesses, testified as a witness to material matters, made findings of fact based on the evidence adduced, including his own, and announced conclusions, which findings and conclusions approach, if they do not attain to, the dignity of a judicial pronouncement.

292

I am not unmindful of the fact that this is an administrative and not a judicial proceeding; that strict rules as to the admissibility of evidence and formal proceedings prescribed and followed in courts of law may properly be, and frequently are, disregarded.

But the result to be reached is the truth or falsity of the charges in the warrant of arrest, and involve matters of the utmost concern and of far-reaching effect to the alien on trial. Surely it was the intent of Congress and of the Department of Labor, in providing for a hearing such as this, that every facility should be provided to guaranty the alien a fair hearing before an impartial presiding officer; one who had not determined in advance what the result should be; one whose mind was not influenced by a personal knowledge of the facts to be found; one whose attitude at the hearing would be, to say the least, quasi judicial. This hearing was intended to partake of the nature of a trial—not an inquisition. The formalities were dispensed with, but the fundamentals should have been observed. The alien was entitled to a fair hearing before an unbiased tribunal, one capable of considering "the evidence with close scrutiny." How can an officer scrutinize the evidence closely when he himself is a witness to material facts?

Can it be said that a hearing conducted by a fact-finding official who has prejudged the evidence and who testifies as to material matters and then passes on the weight to be given his own testimony, does not lead to the conclusion "that a denial of justice may have resulted"?

Is a hearing before one who is at once an investigator of the facts, prosecutor, and trial magistrate, such exercise of authority as can be said to be consistent "with the fundamental principles of justice embraced within the conception of due process of law"?

I am constrained to say "No" to each of the above propositions. No judge of any court would for a moment think of presiding under such circumstances. Then why an immigration inspector? Does the fact that he is an administrative and not a judicial officer, that his mind is untrained in legal proceedings make him less susceptible to be influenced by matters dehors the record? If so, it is a sad commentary upon our judiciary and our time-honored judicial system.

■ The American idea of justice implies an unbiased presiding officer, whether he be called judge, referee, commissioner, master, or inspector. This was necessary to constitute a fair hearing. This was not accorded the alien in these proceedings. He may be a fit subject for deportation; jurisdiction to decide that question is lacking in this court in this proceeding, but, if he is, he should be deported after a fair hearing before an unbiased presiding officer. If he is to be deported, he should go away with the thought uppermost in his mind that, at least, in America, he was accorded a fair hearing. This he did not have.