## NELSON v. JADRIJEVICS. *
### No. 6902.

Circuit Court of Appeals, Fifth Circuit.

Feb. 8, 1934.

*Rehearing denied March 16, 1934.

P. M. Milner, of New Orleans, La., and L. S. Carrington, of Ancon, Canal Zone, for appellant.

Chauncey P. Fairman, of Cristobal, Canal Zone, for appellee.

Before BRYAN, SIBLEY and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

This case was before us heretofore, 59 F.(2d) 25, and was reversed for error in the charge of the court, and a new trial was directed. At that trial the defendant, Nelson, moved that it be conducted according to section 542 of the then Code of Civil Procedure put into effect in the Canal Zone by Presidential Proclamation of March 22, 1907, as follows: "In a new trial ordered by the Supreme Court, all the evidence taken upon the former trial which is competent and admissible shall be used upon the new trial without retaking; but additional evidence may be presented upon the second trial by either party." The court ruled this provision to be inapplicable to the courts of the United States now established in the Canal Zone, and to a new trial granted by the Circuit Court of Appeals, but held that witnesses who were accessible must be re-examined before the jury, and that only the former evidence of those who were inaccessible might be read. By the Act of Congress approved February 27, 1933 (47 Stat. 1124 et seq.) a new Code of Civil Procedure has gone into effect, and a construction of the old one on this point would not be helpful for the future. The record of this trial does not show that any particular evidence was offered and excluded under the ruling complained of, but, on the contrary, the evidence of two witnesses for the defendant was read as taken for the former trial. If there was abstract error in the ruling—we are not intimating that there was—no practical injury appears to have resulted. So far as we are apprised, each party got before the jury all the evidence which he desired. No cause for a new trial is shown. 28 USCA § 391.

The plaintiff was an ignorant man, in bad physical condition, understanding no English, and having to testify through an interpreter. Some of the questions objected to as leading were leading, but it was in the discretion of the court to permit such, and we do not think discretion was abused. The charges of the court were in strict accord with our former opinion, and we find no error in those given, and that they sufficiently covered those refused.

Nor did the court err in refusing to instruct a verdict for the defendant. The evidence is meager, and at important points in direct conflict. The idioms of foreign speech differing from those of English must also be taken into account, as where the plaintiff says Frank Brown shook his head when he apparently meant nodded his head, and says the iron bar which he was removing was there always when the English idiom is that it was still there. But all these things were for the consideration of the jury. They might from the evidence have found that the plaintiff was hired by the superintendent, Shine, and put to work at one of the two power-driven concrete mixers, with the duty to keep open the chute down which the concrete at intervals passed to the heavy iron bucket, which, when filled, was hoisted inside a tower thirty feet and tilted to discharge the concrete to the work, and also with the general duty to keep the premises clean and clear; that Frank Brown, who was in charge of the concrete mixer, had the direction of plaintiff in Shine's absence, though neither understood the language of the other, and communication was by signs; that a few minutes after starting work on the day in question, Shine being absent, plaintiff and Brown at the same time saw an iron bar in the pit into which the bucket would descend, the bucket not having yet been used that morning and being at the top of the tower; that plaintiff pointed the bar out to Brown, who nodded his head to plaintiff to signify that he should get it out, and that plaintiff, in doing so passed out of sight of Brown

and of the operator of the tower, and the operator let the bucket down on plaintiff and injured him. This would, we think, make a case in which plaintiff was directed to get the bar out of the pit so that the bucket might properly descend into it, and in doing so was in the line of his duty and entitled to a reasonably safe place in which to do this work. It does not appear why the bucket was let down just then, nor whose duty it was in the organization of the work to give the signal for its descent. The operator of the tower was a boy sixteen or eighteen years old. Naturally, Frank Brown, who was in charge of the concrete mixer, would give the signals. Certainly he could prevent descent of the bucket. In any case the work was of such complication and danger as to require organization by the master. If there was either a negligent failure to organize the work or a negligent failure of one in charge of it to function, there would be negligence attributable to the master touching his nondelegable duty to see that the place of work was reasonably safe. The case, though not very fully or satisfactorily proven, was for the jury. Their verdict is final.

Judgment affirmed.