115 So.2d 405 (1959)
Willie KING, Plaintiff-Appellant,
v.
Richard E. BROWN, Administrator of the Division of Employment Security of the Department of Labor, State of Louisiana, and H. & W. Wrecking Company, Defendants-Appellees.
No. 9100.
Court of Appeal of Louisiana, Second Circuit.
November 30, 1959.
*406 Melvin L. Bellar, Legal Aid Society of Caddo and Bossier, Shreveport, for appellant.
*407 Lewis D. Dunbar, Baton Rouge, for appellees.
AYRES, Judge.
This is an appeal from a judgment of the First Judicial District Court in and for Caddo Parish, Louisiana, affirming a decision of the Board of Review of the Division of Employment Security of the Department of Labor, State of Louisiana, wherein the appellant-claimant, Willie King, was denied unemployment insurance payments on the ground that he was discharged by his employer, H. & W. Wrecking Company, for misconduct connected with his employment.
This appeal is prosecuted under the provisions of LSA-R.S. 23:1634, as amended by Act No. 523 of 1958, which provides, in part:
"In any proceeding under this Section the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law. * * * Such proceedings shall be heard in a summary manner * * *. An appeal may be taken from the decision of the district court to the circuit court of appeals in the same manner, but not inconsistent with the provisions of this Chapter, as is provided in civil cases. * * * Upon the final termination of a judicial proceeding, the board of review shall enter an order in accordance with the mandate of the court." (Emphasis supplied.)
A brief statement of facts preliminary to claimant's discharge is deemed appropriate to an understanding of the issues presented by this appeal. H. & W. Wrecking Company, plaintiff's employer, was engaged, and had been so engaged, for several months at the former site of the railroad shops of the Kansas City Southern Railway Company in the City of Shreveport. After having been employed by the aforesaid employer for approximately two years, claimant was discharged October 28, 1958, and, on November 3, 1958, he made and filed a claim for unemployment compensation, stating he had been "laid offno reason given"; whereupon he was found ineligible for unemployment compensation benefits for the reason as stated by the agency:
"You were discharged by H. & W. Wrecking Co. because you would not follow instructions. You were instructed to leave your car and ride to the job on the truck. Instead you drove your car to the jobThis is misconduct connected with the work."
An appeal was taken to the appeals referee who, after a hearing conducted on January 19, 1959, and, after finding, according to his recital in his findings of fact, that
"On the day that the claimant was separated from his employment, he had driven his automobile and parked it on a street near the job site. All employees had been instructed that their automobiles would be brought to the office and parked in a parking lot that was made available for them. The employees would then be brought to the job site on a company truck. The supervisor at the job site, G. W. Garner, spoke to the claimant, asking him if he had brought his car to work and he told him that he had parked it on a street in front of a restaurant, approximately two blocks from the job site. He was reminded of the instructions given by the owner about bringing their cars to the job and that he could not be put to work that day. At eight o'clock when the rest of the employees had gone to work, the claimant left, coming back about ten o'clock, where he picked up a bucket and began picking up bolts. He and the supervisor got involved in a discussion about the fairness in the treatment given him, compared to the other workers. The *408 claimant was aware that he was not to bring his car to the, job site and he admits having been spoken to about so doing. The claimant's actual separation was not based upon the fact of his coming to work in the car, but on the attitude he had towards the supervisor and some of the other workers." (Emphasis supplied.),
concluded that
"In the instant case, the claimant was separated by his last employer for failing to follow instructions and also resenting the manner in which his supervisor endeavored to tell him how to perform his work and about his activities in bringing his car near the job site. Had the claimant followed the instructions given, of which he was fully aware, he would be able to continue in employment. Throughout the record, the claimant was aware that he was not to bring his car to the job site and readily admits that he had been spoken to about this practice. The loss of his job is a result of his own actions and it must be held that the claimant set in motion, the conditions which brought about his unemployment, the disqualification is correct." (Emphasis supplied.),
and then ordered that the determination of the agency be affirmed.
On appeal to the Board of Review, the decision of the appeals referee, affirming the agency's determination of claimant's disqualification, predicated upon the finding that claimant was discharged for misconduct connected with his work, was likewise affirmed. Thereafter, followed an appeal to the district court for a judicial review of the decision of the Board of Review disqualifying claimant for unemployment compensation insurance.
After trial, it was found by the trial court that the employer had a rule prohibiting the employees driving to and parking their cars at the site of the work in which they were engaged and requiring that the employees using their personal cars drive them to the employer's office, park on a lot provided therefor, and proceed to the job site in the employer's truck furnished for the transportation of its employees. This rule was found to have been violated by claimant and such violation held a sufficient cause for claimant's discharge; and, accordingly, the findings of claimant's disqualification were approved and sustained and claimant's demands rejected.
On this appeal, plaintiff contends: First, that the findings and conclusions of the agency affirmed by the referee and by the Board of Review are not supported by the evidence; and, second, that such facts as found do not constitute legal misconduct within the meaning and intent of the Employment Security Act. It is further contended that a reversal of the determination on either of these grounds is sufficient to require a reversal of the judgment appealed.
A prerequisite to resolution of these issues is a consideration of the facts as disclosed in the record. Under the statute as originally enacted, the court's inquiry was limited to the question of whether or not the findings of fact of the Board of Review were supported by any evidence. Under the amendment first hereinabove referred to and quoted, the limit of the court's inquiry has been somewhat broadened in that the court, in its prerogative, may review and determine the sufficiency of the evidence upon which the findings of the Board of Review are based. With this principle in mind, we shall proceed to a discussion and consideration of the evidence.
First, however, it may be appropriate to observe that the finding of the agency in the first instance, where claimant was discharged because he would not follow instructions to leave his car at the parking lot and avail himself of the transportation provided by the employer in conveying the employees from its office to the job, and *409 which finding was approved by the learned judge of the trial court, as set forth in his able opinion, was not the finding of the appeals referee, who stated:
"The claimant's actual separation (that is, his discharge from employment) was not based upon the fact of his coming to work in the car, but on the attitude he had towards the supervisor and some of the other workers."
The findings of the Board of Review were that claimant was dismissed for failure to follow instructions and refusal to cooperate with his supervisor, and thus for misconduct connected with his work.
C. M. Harrison, one of the owners of H. & W. Wrecking Company, and who was apparently in charge of its operations, testified that claimant was employed and worked under the supervision of his foreman, G. W. Garner, to whom he delegated authority to discharge this employee. Garner made it very clear that claimant's discharge came about not because claimant parked his automobile near, or, as claimant testified, two-and-a-half blocks away from, the job site, but that claimant was discharged because claimant told the foreman that the foreman should treat everybody alike.
There is no evidence to support the charge that on the day claimant was fired, or discharged, he violated the instructions given him about the parking of his car. Actually the instruction was that the employee should not drive his car to the job site, but should proceed to the office and from that point ride on a truck to the job, wherever it might be. It is obvious from Garner's testimony that these instructions were limited to the taking of the car to the job site. Such being the instruction, it is evident that claimant did not violate any rule of the company on the day he was discharged.
From a careful consideration of all the testimony on the point, it can only be concluded that claimant was discharged because the foreman became piqued. Therefore, we conclude, as did the claims referee and the Board of Review, that the evidence did not support the charge made and the conclusion reached by the local agency that claimant violated a rule and instruction of his employer with reference to taking his car to the job site. This conclusion is supported by the employer's failure to make mention of the fact in filling out the form contained on the reverse of the notice of claim.
According to the evidence, the day claimant was discharged from his employment was the first time he had been told he should not even park his automobile on a public street. This was testified by the foreman. This is not shown to be contrary to his employer's interest or to constitute misconduct within the intent and purpose of the Employment Security Act. Definition of the term "misconduct" is given in our opinion in Burge v. Administrator, Division of Employment Security of Department of Labor of State of Louisiana, La. App., 83 So.2d 532, 534, as follows:
"`Willful and wanton disregard of an employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employees, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show intentional and substantial disregard of the employer's interests, or of the employee's duties and obligations to his employer.'"
No ulterior motive or design is shown in claimant in parking his car as he did on the day he was discharged, and there is no showing of any deliberate violations or disregard of standards of behavior in the parking of said vehicle which the employer had a right to expect of this employee.
Nor do we find from the evidence any basis for the appeals referee's findings that claimant was separated from his employment *410 because of his failure to follow instructions and also by resenting the manner in which his supervisor endeavored to tell him how to perform his work, or the conclusion reached by the Board of Review that he was discharged for failure to follow instructions and refusal to cooperate with his supervisor; nor that the claimant, as contended at the hearing by the employer, could not work in harmony with the other employees.
The evidence is wholly lacking, or, at least, totally insufficient, upon which such charges and contentions could be supported. Other than claimant and the foreman, the only employee testifying was one, Payne, who testified he never had any trouble with King. That King, the claimant, was a troublemaker finds no support in the evidence; nor would the mere showing that some of the employees did not get along with claimant be sufficient evidence to establish as against claimant a willful disregard by him of the employer's business or interest.
From our review of the entire record and for the reasons hereinabove recited, the conclusion is inescapable that claimant has not been shown guilty of misconduct in connection with his employment within the intent and purpose of the Employment Security Act.
While the aforesaid reasons, in our opinion, fully justify, warrant, and impel a reversal of the judgment appealed, we deem it expedient and appropriate to give brief consideration to appellant's objections to the manner and mode of procedure pursued in this case. Appellant shows that in the initial agency determination of his claim, under the provisions of L.S.A.-R.S. 23:1624, his discharge from employment was predicated upon the charge that he would not follow instructions in leaving his car at the employer's office and riding to the job site in a conveyance furnished by the employer. Although he was exonerated of said charge, he was, nevertheless, found guilty of misconduct in connection with his employment, of which he had no prior knowledge and with which he had not been charged. Under the provisions of the aforesaid statute, the agency is required to accept a discharged employee's claim and to make a prompt determination thereon, and, "in the event of a denial of benefits, the determination shall state the reasons therefor."
Claimant, therefore, protests that the substitution and allowance of charges other than that found by the agency is in conflict with the provisions of L.S.A.-R.S. 23:1629, providing that a claimant shall be afforded an opportunity for a "fair hearing." A "fair hearing" is synonymous with a "fair and impartial trial," and the terms, at least, by strong implication, require a reasonable and substantial compliance with the principle of due process of law. A "fair trial" includes the right to notice of the charges one is to be confronted with, and the right of cross-examining his accusers, and to examine and refute the evidence tendered against him. An opportunity to be heard and to defend are essential elements of a fair hearing and of due process. Due process of law means in the due course of legal proceedings and according to the rules and forms which have been established for the protection of private rights and refers to a law which hears before it condemns, and which proceeds upon inquiry and renders judgment only after trial.
Such has been the principle prevailing in all civilized countries from time immemorial, even as a prerequisite to the first judgment ever rendered. Contained in Holy Writ is the story of man's shameful fall and condemnation because of sin. Adam and Eve, with guilty consciences, on the approach of the Lord, hid themselves among the trees in the Garden of Eden. Whereupon, the Lord "called unto Adam, and said unto him, `Where art thou?'" (Gen. 3:9.) Though his excuses were wholly without merit and, therefore, unacceptable, Adam was, nevertheless, afforded *411 an opportunity to respond, explain himself, tell his whereabouts and the reason why. Notice to and an opportunity to be heard in justification or explanation of one's conduct have ever since constituted essential prerequisites to a just condemnation.
In the instant case, claimant was charged in the agency's determination of misconduct connected with his employment in a certain specified particular. He and his counsel attended the hearing. Based upon that charge, prepared for its refutation, they successfully, according to the appeals referee and the Board of Review, disproved or rebutted the charge. Notwithstanding the employee's exoneration of the charge directed against him, the appeals referee and the Board of Review found the employee guilty of other misconduct with which the employee had not been charged, with which he had no prior knowledge, by which he was surprised and which he was unprepared to defend. It is a mere coincidence in the instant case that after an appeal for a judicial review he was able to successfully urge that the anonymous charges had not been established.
As pointed out in Burge v. Administrator, Division of Employment Security of Department of Labor of State of Louisiana, supra, the findings of fact by the Board of Review, as well as those of the appeals referee, must be supported by evidence and by that is meant legal and competent evidence. To that statement of essential requirements must be added the basic prerequisite to any finding, that of notice of the charge and an opportunity to be heard thereon; otherwise, the parties are denied a reasonable opportunity for a fair hearing as conferred by statute. By the substitution of charges aforesaid, claimant was not afforded the fair hearing contemplated by the statute.
Moreover, reference to the transcript of evidence discloses that a considerable number of questions were asked by and considerable of the testimony was given by, an anonymous person, or persons, only designated by the appellation "background." The record does not disclose the interest of this anonymous person, or persons, or that such parties were sworn on the verity of their statements. This procedure does not, in our opinion, constitute a fair and impartial hearing or trial in accordance with established rules and principles which implies ample opportunity for a litigant to present or defend before an impartial tribunal in an orderly manner and in an atmosphere of calm.
While the Board of Review may, under authority of the statute, prescribe regulations for the presentation and the conduct of hearings and appeals, not necessarily in strict conformity with the usual rules of evidence and technical rules of procedure, the fundamental principles governing a fair and impartial hearing or trial and due process of law must not be entirely dispensed with, but should be reasonably and substantially adhered tosuch are contained in the mandate of the statute that the claimant be afforded an opportunity for a "fair hearing."
For the reasons assigned, the claimant-appellant is, in our opinion, entitled to the unemployment compensation benefits for which he made claim.
Accordingly, the judgment appealed should be and it is hereby annulled, avoided, reversed and set aside; and it is now Ordered, Adjudged and Decreed there be judgment herein in claimant appellant's favor, and therefore this cause be and it is hereby remanded to the Board of Review with instructions that an order issue therein directing the payment to plaintiff of the unemployment compensation insurance or benefits to which he is entitled under the Louisiana Employment Security Law, L. S.A.-R.S. 23:1471 et seq., and it is so ordered.
Reversed, rendered, and remanded.