**Mary B. JONES, Claimant, Respondent,**

v.

**STATE DEPARTMENT OF PUBLIC HEALTH AND WELFARE,**
Appellant.
No. 23539.

Kansas City Court of Appeals.
Missouri.
Feb. 5, 1962.

Thomas F. Eagleton, Atty. Gen., Gilbert D. Stephenson, Asst. Atty. Gen., for appellant.

Robert Devoy, Brookfield, for respondent.

CROSS, Judge.

Prior to December 11, 1959, respondent Mary B. Jones (hereinafter called Claimant), received aid to dependent children as provided by Section 208.040, V.A.M.S., and as administered by the State Department of Public Health and Welfare, on the basis that her husband was physically and mentally incapacitated. On the named date she was removed from the roll of aid recipients by a decision of the department based on its findings that her husband, Dewey Jones, was not physically or mentally incapacitated from performing gainful work—a procedure permitted by Section 208.040 V.A.M.S. Claimant appealed from that decision to the

director of the department under the provision of Section 208.080 V.A.M.S. After a hearing the director determined that claimant's husband was not mentally or physically incapacitated for work and that, therefore, she was ineligible to receive dependent aid benefits for her children.

Upon appeal to the circuit court by claimant, that court found that the director's decision was not based on substantial evidence and was, therefore, arbitrary and unreasonable, and ordered that the decision be set aside and that the case be remanded to the director for re-determination. From that judgment the department has appealed.

■ It is suggested by the Attorney General, appearing on behalf of appellant, that exclusive jurisdiction of this appeal is in the Supreme Court under Article V, Section 3 of the 1945 Missouri Constitution, V.A.M.S., because the director is a state officer and is a party to this proceeding. The suggestion has no merit. White v. State Social Security Commission, 345 Mo. 1046, 137 S.W.2d 569.

This proceeding affects three children born to claimant's marriage with Dewey Jones. They are five, ten and twelve years of age and live at home with their parents. Other facts and circumstances shown by the evidence are substantially as follows:

Dewey Jones is 61 years old. Prior to 1955 he lived an active life and had been variously employed as a school teacher, a bridge carpenter, plumber's helper and farm worker. In 1955 he had an operation for removal of a malignant tumor on his jaw. He received twelve X-ray treatments for the tumor before the operation and four additional such treatments afterward. At the date of the hearing he was a patient at the Ellis Fischel Hospital at Columbia.

Claimant testified that since the tumor operation her husband has been abnormal in that he had become nervous, took dizzy spells and couldn't think for himself—that he is "more like one of her children" and depends on her for everything. Mr. Jones

testified that since the operation he suffered headaches, dizziness, back pains, defective hearing, defective vision, prostate trouble and loss of memory; that he has attempted to work but was physically and mentally unable to do so. Irvin Thomas, a carpenter, testified on claimant's behalf that he had hired Mr. Jones as a helper but that Jones was unable to perform the duties assigned him; that although he made an honest effort to work he could not do it. Ethel Neff, a neighbor, testified on behalf of claimant that she had on occasions hired Mr. Jones as a helper. She stated that for the past year he is so forgetful you can't depend on him; that "he couldn't understand what was to be done or anything about it", and that he couldn't get up on a ladder because it made him dizzy.

Dr. John R. Dixon, a medical doctor, testified on behalf of claimant that in his opinion Dewey Jones was not able to carry out gainful employment. Based on a general physical examination, Dr. Dixon diagnosed that Jones was suffering from Horner's syndrome (left side), pre-senile mental change with memory defects, osteoarthritis of the lumbar spine and chronic prostatitis. Dr. Dixon stated: "As you recall, I mentioned he had twelve deep therapy treatments on that left parotid area in the summer of 1955, followed by four more. I can't quite conceive of that much irradiation being given. * * * there are other structures in that vicinity besides the parotid gland, mainly nerve tissues of the brain, and I can't help but feel that certain changes instant to that irradiation has contributed a great deal to his mental condition as it exists today".

Two witnesses testified on behalf of the department—an osteopathic doctor and a welfare case-worker. The former, Dr. Ryals, examined Mr. Jones three months before the hearing at the request of the county welfare office. The extent of that examination was not stated except that "I felt it was adequate to satisfy the needs that were called upon at that time". Dr. Ryals testified that Jones was capable of

performing work. He stated, "If I had known this was coming up I can assure you I would have requested every type of examination, * * * and I might make myself clear now, that it was just my humble opinion at the time I examined this gentleman that on that specific day he was able to do his job as stated in the application". The welfare case-worker, Jesse Wheeler, testified that Mr. Jones "seems to accept what is said to him and he understands it".

Our first duty, as prescribed by the statutes governing appeals of this nature, is to determine "whether or not a fair hearing has been granted the applicant". Section 208.110, V.A.M.S.; Section 208.100, V.A.M.S. (Section 208.110 provides that appeals from the circuit court shall be in the same manner as provided by Section 208.100 for appeals from the director to the circuit court). Section 208.100 further provides: "If the court shall decide for any reason that a fair hearing and determination of the applicant's eligibility and rights under this law was not granted the individual by said director, or that his decision was arbitrary and unreasonable, the court in such event shall remand the proceedings for redetermination of the issues by said director".

Appellant recognizes our incumbent duty to determine whether claimant had a fair hearing by joining in that issue. It is urged in appellant's brief that claimant was afforded a fair hearing because the record shows her presence at the hearing, with counsel, and that she was given full opportunity to testify, introduce evidence and cross-examine witnesses. Even so, it does not necessarily follow that she was accorded other additional rights inherent in the basic concept of due process.

"Fair hearing" is defined in 35 C.J.S., page 598, as "One in which authority is fairly exercised, that is, consistently with the fundamental principles of justice embraced within the conception of due process of law". An administrative proceeding will not be considered a "fair hearing" if it lacks the rudimentary elements of "fair play" em-

braced within the requirements of due process. Ritch v. Director of Vehicles & Traffic, D.C.Mun.App., 124 A.2d 301. It cannot be said that there has been a "fair hearing" if practices are indulged in or the hearing is conducted in a manner leading to the conclusion that a denial of justice may have resulted. United States ex rel. Dean, etc. v. Reynolds, D.C.Ind., 2 F.Supp. 290. A "fair hearing", as used in a statute providing that an unemployment compensation claimant shall be afforded an opportunity for a fair hearing *is synonymous with "a fair and impartial trial"* and requires a reasonable and substantial compliance with the principle of due process of law. King v. Brown, La.App., 115 So.2d 405. The cardinal test of the presence or absence of due process in an administrative proceeding is defined by 16A C.J.S. Constitutional Law § 628, p. 851, as "the presence or absence of rudiments of fair play long known to the law".

▇▇ Therefore, it is our view that an administrative proceeding such as the one now before us should be conducted as much in accordance with fundamental principles of justice and fairness as are judicial trials. That requirement is not satisfied unless the administrative proceeding is conducted by "an impartial officer, * * * free of bias, hostility, and prejudgment". 16A C.J.S. Constitutional Law § 628, p. 862. It follows that hostile conduct and comments on the part of the presiding officer indicating bias and prejudgment may constitute a denial of fundamental justice. As stated in United States ex rel. Dean, etc. v. Reynolds, supra, "The American idea of justice implies an unbiased presiding officer, whether he be called judge, referee, commissioner, master or inspector. This was necessary to constitute a fair hearing". In our opinion those principles apply to the hearing from which this appeal arose.

The hearing on claimant's application was conducted by an attorney for the department who was appointed as a referee for that purpose by the director of the depart-

ment. The attorney-referee produced and examined the department's witnesses, cross-examined claimant's witnesses and heard and ruled upon all objections. Since the statute providing for his appointment makes no provision for a report or recommendation based on the hearing, he submitted none to the director. As provided by Section 208.080, the director made the decision in claimant's appeal upon the record of the hearing.

▇▇ A referee is a quasi-judicial officer. It is elementary that he must observe the strictest impartiality and show no favor to either of the parties by his conduct, demeanor or statements. We believe that such standard of judicial conduct was not observed in the course of claimant's hearing. On the contrary, it is our opinion that the referee went beyond the scope of his lawful authority by expressing opinions on the merits of the controversy and by making comments on the evidence amounting to unsworn testimony unfavorable to the interest of claimant—all preserved in the record certified to the director. We are convinced that claimant's rights were so prejudiced by those remarks that she was denied a fair hearing.

During the cross-examination of Dewey Jones by the referee, the following questions, answers, statements, objections and rulings occurred as shown by the record:

"(*THE REFEREE*) Q What is it, Mr. Jones, that prevents you from working now if you wanted to work? What is it that prevents you from working if you wanted to?

"*MR. DEVOY*

"I object to that double-barreled question. You are assuming he don't want to do it.

"(*THE REFEREE*)

"Q No, I am not. I am assuming he wants to work. He says he has been looking for work.

"(The Witness) State your question.

"(*THE REFEREE*)

"Q In other words, looking at you*r*, Mr. Jones, you look to be a normal person to me. You look of normal weight for a man of your height. You must be what, six feet tall, is that right?

"A I am not quite six feet.

\* \* \* \* \* \*

"(*THE REFEREE*)

"Q Well, as I said, to me you appear to be a normal person from my observation. What is it that prevents you from working if you wanted to work?

"*MR. DEVOY*

"I object to the observation made by the Referee.

"(*THE REFEREE*)

"The objection is over-ruled".

The foregoing excerpt of the record shows that the referee made two statements of fact (as distinguished from interrogation) as follows: (1) "In other words, looking at you*r*, Mr. Jones, you look to be a normal.person to me. You look of normal weight for a man of your height". (2) "Well, as I said, to me you appear to be a normal person from my observation".

Manifold vices inhere in the quoted comments: (1) They are unsworn statements of purported fact. (2) They are voiced demonstrations of bias against claimant. (3) They are expressions of the referee's opinion on the sole issue of fact and on the merits of the case. (4) They amount to an openly expressed pre-judgment of the controversy. (5) They tended to intimidate the witness Dewey Jones during his examination. (6) They tend to discredit or disparage the witness Dewey Jones and his evidence—as well as the evidence of all witnesses who testified to his incapacity for work. These deviations from official duty are not matters of form, but partake of vital substance. Each of the enumer-

ated effects of the referee's impropriety is an invasion of claimant's right. Combined, they have defeated her entitlement to a just determination.

We cannot assume that the referee's remarks were harmless and without prejudicial effect, since they were present in the record upon which the director made his decision. We presume that those comments were read by the director, together with all other matter properly shown at the hearing. Whether or not the director was influenced in his decision by the referee's views of the case, we are unable to say— any more than we could say, with informed certainty, whether like indiscretions on the part of a trial judge in a jury case had any effect on the jury's verdict. It is sufficient to note that the prejudicial remarks and expressed views of the referee could have been a factor in the turn of the decision against claimant.

The traditional procedures which have developed in courts of common law are the indispensable safeguards of liberty and personal rights. These processes must be preserved inviolate by the courts of their origin. We are here mindful of the admonition directed to administrative agencies by the Supreme Court of the United States in Morgan et al. v. United States et al., 304 U.S. 1, 58 S.Ct. 773, 778, 82 L.Ed. 1129, in these words of Chief Justice Hughes: "The maintenance of proper standards on the part of administrative agencies in the performance of their quasi-judicial functions is of the highest importance and in no way cripples or embarrasses the exercise of their appropriate authority. On the contrary, it is in their manifest interest. For, as we said at the outset, if these multiplying agencies deemed to be necessary in our complex society are to serve the purposes for which they are created and endowed with vast powers, they must accredit themselves by acting in accordance with the cherished judicial tradition embodying the basic concepts of fair play."

In view of our finding that claimant was not granted a fair hearing, it is unnecessary for us to consider whether the director's decision was arbitrary and unreasonable.

In accordance with our expressed views, we affirm the judgment of the circuit court setting aside the director's decision and remanding the case to that official for redetermination.

All concur.