## KEMP v. GOVERNMENT OF CANAL ZONE.

### No. 12134.

Circuit Court of Appeals, Fifth Circuit.

May 15, 1948.

Thos. D. McBride and John Patrick Walsh, both of Philadelphia, Pa., and Woodrow de Castro and J. J. McGuigan, both of Ancon, Canal Zone, for appellant.

Daniel E. McGrath, U. S. Atty., of Ancon, Canal Zone, for appellee.

Before SIBLEY, McCORD, and LEE, Circuit Judges.

SIBLEY, Circuit Judge.

Edward Kemp was found guilty on June 20, 1947, of first degree murder of Thomas R. Mora by stabbing him with a knife on May 10, 1947, on shipboard in the Canal Zone; motions to hear evidence in mitigation of sentence and for new trial and in arrest of judgment were overruled; and he was sentenced to be hanged. On this appeal, as in his preliminary hearing and in the trial in the District Court of the Canal Zone, able and experienced counsel have represented him. Many errors have been urged, those meriting notice being discussed below. The evidence was wholly circumstantial, and without serious conflicts. It established with fair certainty that about 4:20 A.M. Mora was stabbed in the chest, his pulmonary artery being severed, while asleep beside the open port hole of his room, the assailant reaching him through the port hole which was sixteen inches in diameter and large enough for a man's head and shoulder and arm to be thrust through it. A bloody three bladed Barlow pocket knife, the large blade three inches long being open, was found lying on the floor of the outer corridor of the ship near the port hole. There were forty-four members of the ship's crew beside Mora. The acute question was who did the deed.

1. Two concededly expert technicians ascertained by blood drawn from Mora's body that his blood was "type A", while Kemp's was found to be of the more common "type O"; and that some fresh blood spots on garments found on Kemp shortly after the stabbing were "type A" blood, while other blood thereon was "type O". Kemp said that all came from his injured thumb and ear. The technicians testify that by well established tests human blood can be readily distinguished from animal blood; and that of human blood four types can be distinguished with accuracy and must be in making all blood transfusions; but no way of identifying the blood of an individual person is known. Appellant argues that there is no precedent in the federal courts where such tests have been admitted as evidence in a criminal case. Accepting the clear and positive and uncontroverted testimony of the tech-

nicians, we think these tests are admissible evidence. They do not show that Kemp had the blood of Mora on his shirt, but do show that certain spots were not Kemp's own blood, and were of the same type as Mora's blood. The circumstance was of some weight, to be judged of by the jury.

■ Kemp took the stand as a witness, and on cross-examination he was asked, over objection, if he had not been previously convicted of two felonies in the State of Washington, and whether they were not robbery and murder, and he answered yes. In answer to his counsel's question he testified that the conviction of murder was in the second degree and he was paroled on that. The court instructed the jury that these convictions could not be taken as any evidence of guilt or innocence upon this trial, but were to be considered only as affecting Kemp's credit as a witness. In this there was no error. When a defendant takes the witness stand in his own defense he is subject to impeachment like any other witness. For this purpose he may be asked about his conviction of felony, when the objection is not made that the record is the best evidence. The convictions here indeed had been admitted of record before the trial for murder was entered upon, for there was an additional charge that involved them as second offenses, but no sentence was imposed for this offense, and it has no place in this record.

■■ 3. A preliminary hearing before a magistrate was held two days after the killing, and the ship, which was on the point of sailing for China, was held over, and many of its crew examined as witnesses. Their testimony, and cross-examination in behalf of Kemp, were stenographically reported, and that of nine of them was caused to be transcribed and signed by each witness, under a statement by the district attorney that they would probably not be available at the trial. This was done under the provisions of Canal Zone Code, Title 6, Sect. 14: "In a criminal action the defendant is entitled: a. To a speedy and public trial; b. To be allowed counsel as in civil actions, or to appear and defend in person and with counsel; and c. To produce witnesses on his behalf and to be confronted with the witnesses against him, in the presence of the court, except: 1. That the deposition of a witness may be read, upon its being satisfactorily shown to the court that he is dead or insane or cannot with due diligence be found within the Canal Zone, in cases wherein the charge has been preliminarily examined before a committing magistrate and the testimony taken down in question and answer form in the presence of the defendant who has either in person or by counsel cross-examined or had an opportunity to cross-examine the witness * * *." It was shown in the trial that these nine witnesses, members of the ship's crew, were not then in the Canal Zone, but had sailed two days after they had testified and were believed to be in Shanghai, China. Thereupon the depositions, testified by the stenographer to be correct, were read without any objection touching confrontation. Counsel for the defendant himself read the cross-examination of each witness. Nor was such objection raised in the motion for new trial, or in the brief filed in this court on Jan. 12, 1948. By a supplemental brief filed April 19, 1948, it was for the first time urged that the right of confrontation guaranteed by the Sixth Amendment of the federal Constitution had been denied, and that the above quoted provision of the Canal Zone Code is unconstitutional and void. Assuming, without deciding, that the Sixth Amendment is of controlling force in the Canal Zone,[1] we hold that the right of confrontation is waivable, and was waived in the trial, and that the statute says no more than is recognized generally in applying the constitutional provision. The witnesses were beyond the process of the court, and the confrontation in the committal trial suffices, especially since the defense introduced the cross-examination of each witness. See 14 Am.Jur., Criminal Law, § 187.

■ Some leading questions were asked and answered over objection made in

---

[1] The Sixth Amendment is probably not in force in the Canal Zone. Compare Balzac v. Porto Rico, 258 U.S. 298, 42 S.Ct. 343, 66 L.Ed. 627, and cases cited; Kepner v. United States, 195 U.S. 100, 24 S.Ct. 797, 49 L.Ed. 114, 1 Ann.Cas. 655.

the committal hearing. The objections were renewed in the trial. The judge overruled them on the idea that the questions could have been reframed with the witnesses present, but that could not be done with them gone. Objectionable evidence in depositions ought to be ruled out at the trial, and some was ruled out in this case; but permitting leading questions is always in the discretion of the trial judge. Some of the questions objected to were leading, but not on very important points, and the witnesses all seem not to have followed the lead, but to have answered independently. There was no error in hearing their answers.

■ 4. We find no reversible error in the instructions given to the jury. In instruction No. 9 the jury were told they might render one of four verdicts whose form was given, two being variants of first degree murder, one of second degree murder, and one of not guilty. At the end of the charge the judge said: "Herewith you will find two forms of verdict. The foreman will sign that form which accords with your finding and you will then return with it into open court." The judge then asked counsel if there was any objection to the instructions, or any desired to be offered, and they made no objections and offered no requests.[2] It nowhere appears what two forms of verdicts were thus handed the jury, or that they signed either one. The motion for new trial does not include this as a ground. If there was any contradiction or confusion it could have readily been corrected at the time, and attention should have been called to it notwithstanding that under the practice in the Canal Zone formal objection need not be made to erroneous instructions. We do not now know what was in the verdicts handed to the jury. If there was anything amiss, the record ought to have been made to show it.

5. The Canal Zone Code, Title 5, Secs. 251 and 252 and 253, defines murder and its two degrees much as they are defined in the Penal Code of the United States. Section 254 reads: "Punishment for murder.—Ev-

ery person guilty of murder in the first degree shall suffer death, or, if there be extenuating circumstances, confinement in the penitentiary for life, and every person guilty of murder in the second degree is punishable by imprisonment in the penitentiary not less than ten years." Title 6, Sec. 482 declares: "The several sections of Title 5, The Criminal Code, which declare certain crimes to be punishable as therein mentioned, devolve a duty upon the court or magistrate authorized to pass sentence, to determine and impose the punishment prescribed." And Section 494 is: "After a plea or verdict of guilty where a discretion is conferred upon the court as to the extent of the punishment, the court, upon the oral suggestion of either party that there are circumstances which may be properly taken into view either in aggravation or mitigation of the punishment may in its discretion hear the same summarily at a specified time and upon such notice to the adverse party as it may direct." See also Federal Rules of Criminal Procedure, rule 32, 18 U.S.C.A. following section 687.

The judge before instructing the jury indicated that he thought the jury, if they found guilt of murder in the first degree, should pass on extenuating circumstances and whether the punishment should be death or life imprisonment. The defendant objected and insisted that it was the business of the judge. He, however, instructed the jury to attend to it, and one of the four verdicts which he stated they might find was "Guilty of murder in the first degree with extenuating circumstances." Their verdict was "Guilty of murder in the first degree." The defendant before sentence suggested that there were extenuating circumstances and asked a hearing under the above quoted statute. This was refused because foreclosed by the verdict, but it was ordered that the defendant himself be heard, and he was heard at length, but without avail. Error is assigned as to these actions of the judge.

■ We are of opinion that it is not, under the above quoted statutes, the function of the jury to fix the punishment. They

---

[2] The Clerk's minutes read thus: "Counsel for both sides state to the court that they have no instructions to offer and that they have no objections to the instructions as given by the court."

should find guilt and the degree of it, but the duty of determining the punishment devolves upon the sentencing magistrate. This exact question was decided in 1913 by the then Supreme Court of the Canal Zone. It was held, one judge dissenting, that the duty of considering whether there were extenuating circumstances in cases of guilt of first degree murder was upon the trial judge. All of the judges agreed that his action was reviewable in the appellate court, which might render the decision the judge ought to have made. After quoting the section which is now Sec. 254, supra, the majority said: "This section relates to penalty only. It provides an alternate punishment for the crime of murder in the first degree. Whether that punishment shall be death or confinement in the penitentiary for life is a question addressed to the judicial conscience of the trial judge and is to be determined by him in the light of an honest consideration of the facts and circumstances of the case, just as he determines by an impartial consideration of the facts whether he shall impose a term of ten, fifteen or twenty years imprisonment as a punishment of second degree murder." Canal Zone v. Zaldivar, 2 C.Z.Reps. 227. That decision has stood for thirty-five years, and we consider it correct. The judge in this case was in error in submitting the question of extenuating circumstances to the jury, but it did no harm. The jury did not find any, but rendered their verdict in the proper form. No new trial is due for this cause.

 But the trial judge was also wrong in not himself considering whether there are extenuating circumstances, and in not assuming the responsibility of fixing the proper punishment. Since he tried the case and would be in the best position to weigh the circumstances we would ordinarily set aside the sentence with direction that he determine this matter uninfluenced by what might be considered to be the jury's opinion about it. But the judge has retired from office and left the Canal Zone. Nevertheless our own powers of review are very broad. In appeals from the Canal Zone, in cases civil and criminal, we may, besides affirming, modifying or reversing, enter such judgment as ought to be made. 48 U.S.C.A. § 1356; Canal Zone Code, Title 7, Sec. 61. The evidence is wholly circumstantial and not conclusive. No great motive for a premeditated killing appears. Kemp was drinking heavily ashore the evening before, he overstayed his shore leave by four hours, and brought a bottle of whiskey with him to the ship. The witnesses differ as to his apparent sobriety after returning to the ship about 2:30 A.M. He claims to remember almost nothing after having fallen out of the launch coming back to the ship. The fatal knife is not identified as his. While arrogant and insolent in his attitude to the investigating officers in the early morning on the ship, he became hysterical about 10 A.M. We are aware that by the law of the Canal Zone voluntary intoxication does not abate guilt of crime, yet we feel that it must be considered as a circumstance in choosing the proper punishment in a capital case. In view of all the circumstances we do not think human life should be taken, but that the proper exercise of judicial power here is to choose the alternate punishment of life imprisonment. This is the best defendant could get if the matter were sent back to the district judge.

We therefore direct that the verdict stand, but that the sentence of death be set aside and the cause remanded, and that the defendant Edward Joseph Kemp be brought before the district court and sentenced to be imprisoned for his natural life.