**GOVERNMENT OF The CANAL ZONE, Plaintiff-Appellee,**

v.

**Ruben Antonio Yanez P. (PINTO), Defendant-Appellant.**

**GOVERNMENT OF The CANAL ZONE, Plaintiff-Appellee,**

v.

**David Rouse U. (UWEIL), Defendant-Appellant.**

**Nos. 78–5102, 78–5103.**

United States Court of Appeals, Fifth Circuit.

March 8, 1979.

Roger I. Dallam (Court Appointed) Gretna, La., for defendant-appellant in No. 78–5102.

Frank J. Violanti, U. S. Atty., Wallace D. Baldwin, Asst. U. S. Atty., Balboa, Canal Zone, for plaintiff-appellee.

Edna Sakir Morgan, Court Appointed, New Orleans, La., for defendant-appellant in No. 78–5103.

Before WISDOM, GODBOLD and TJOFLAT, Circuit Judges.

WISDOM, Circuit Judge:

R. A. Yanez P. (Pinto) and D. Rouse U. (Uweil), the defendant-appellants, were convicted of assault with intent to rob. The evidence identifying them as the assailants consisted in part of hearsay statements made by the two victims at a preliminary hearing. These statements were introduced under the Canal Zone codal provisions regulating the use of deposition testimony of absent witnesses. Because the government made no showing that it was unable to procure the attendance of the declarants to testify at trial, the prosecution's use of this testimony violated sections 3507 and 4301 of the Canal Zone Code and Rule 804 of the Federal Rules of Evidence. The testimony affected substantial rights of the defendants; it was unreliable and prejudicial. The admission of the depositions into evidence was, therefore, plain error. We reverse.

I.

Between 3:00 and 4:00 in the afternoon on November 6, 1977, Vincent Molineaux and his father-in-law, Joseph Segolo, were assaulted while strolling with their wives on the Fourth of July Avenue in the Canal Zone. Police officers Grimaldi and Burch, who were patrolling the street, immediately arrested the defendant Yanez. On November 7, the day after Yanez's arrest, a preliminary hearing was held before a magistrate. At that time Rouse was still at large. The two victims were scheduled to sail that day. The prosecution, therefore, deposed them on the authority of the Canal Zone Code of Criminal Procedure, which permits the government to examine and perpetuate the testimony of any witness who is "about to leave the Canal Zone". 6 C.Z.C. § 4293. The two witnesses testified in English; a summary of their testimony was communicated to Yanez in Spanish at the end of the proceedings.

Mr. Molineaux testified that he was walking down the Fourth of July Avenue when he felt someone place a hand in his pocket. As he tried to shake the hand away, he saw a man, the defendant Yanez, and, at the same moment, realized that his father-in-law was on the ground. He then saw the defendant and another man running across the street. Mr. Segolo testified next. He stated that he was walking behind his son-in-law when he saw the defendant try to grab a camera slung across Mr. Molineaux's shoulder. Mr. Segolo said that he tried to assist his son-in-law, but the defendant caught him around the neck and pushed him to the ground. When he got up, he saw that the police had caught the defendant.

Yanez was represented at the examination by an attorney appointed fifteen minutes before the hearing began. On cross-examination, his attorney elicited the information that Mr. Molineaux did not actually see Yanez push his father-in-law. Indeed, he never saw Yanez's face; the defendant's back was to the victim at all times until Yanez crossed the street and was arrested

by the police. Mr. Segolo acknowledged on cross-examination that he was flung to the ground from behind; hence, the man he saw grab the camera could not have been his assailant. Moreover, he, too, did not see Yanez's face; he identified Yanez because he recognized him as the man who was later arrested by the police.

The second defendant, Rouse, was arrested ten days after this hearing took place. Through his court-appointed attorney, Rouse waived a preliminary examination. Sometime before trial, the depositions of Molineaux and Segolo were summarized for him.

On January 9, 1978, Yanez and Rouse, jointly represented by a second court-appointed attorney, were tried before a judge for assault with intent to commit robbery in violation of Section 337 of title 6 of the Canal Zone Code. The prosecution, explaining to the court the circumstances of the taking of the depositions of the two victims at the preliminary hearing, moved to introduce their testimony into evidence on the authority of sections 3507 and 4301 of the Canal Zone Code, which govern the use of deposition testimony at trial. The defense made no objection and the depositions were read into the record.

The prosecution's case was also based on the live testimony of Officers Grimaldi and Burch. Office Grimaldi stated that he had seen both defendants talking together immediately before he spotted a group of tourists headed in the direction of the defendants. He and Officer Burch radioed to other units to place the defendants under surveillance, then drove to the end of the street and headed back towards the group. As they drove back, Grimaldi stated, he saw Rouse place a hand in Mr. Molineaux's pocket. Yanez grabbed the camera and struggled with Mr. Segolo. The assailants then headed towards Panama City, which is across the Fourth of July Avenue. Yanez was arrested while walking down the avenue; Rouse, however, escaped into the Republic of Panama. Officer Burch corroborated this testimony.

The defendants denied that they had committed the assault. Yanez stated that he was near the tourists when the assault took place but insisted that he did not participate in the crime. He asserted, for what it is worth, that Mrs. Molineaux and Mrs. Segolo had exonerated him at the scene of the offense and at the police station. The officers denied this. Rouse admitted that he was with Yanez earlier but said that he was never near the group.

The defense theory was that the two men were known to the police and marked as likely law offenders before the offense occurred. The defense postulated that the officers could not have seen exactly who assaulted the tourists but assumed that it must have been the defendants. Indeed, on cross-examination the defense established that the officers were about a hundred feet away from the group when, according to their testimony, they saw Rouse place a hand in Mr. Molineaux's pocket. Moreover, both officers acknowledged that they "knew" it was Yanez who pushed Mr. Segolo to the ground only because they saw Mr. Segolo grab him later.

The trial judge rejected the defense theory, stating that the identification testimony of the two victims, who had no previous connection with the defendants, was determinative. Yanez and Rouse were convicted and sentenced to six years at hard labor. Both defendants appeal, represented by a new set of attorneys. They contend that the Canal Zone codal provisions regulating the use of deposition testimony at trial are unconstitutional and that their right of confrontation was violated by the introduction into evidence of the preliminary hearing testimony of the two victims. We do not decide the constitutional issues. We hold that the testimony was admitted into evidence in violation of the Canal Zone Code and federal evidentiary law.

## II.

Statements made at a preliminary hearing are treated as hearsay by the Federal Rules of Evidence, in force in the Canal

Zone.[1] Rule 804(b)(1) (1975).[2] Although preliminary hearing testimony is not characterized by the substantial risks that are present in most hearsay statements because the testimony is given under oath, subject to the penalty for perjury and the test of cross-examination, it lacks an important dimension of live evidence. The demeanor of a witness is "wordless language". *Broadcast Music, Inc. v. Havana Madrid Restaurant Corp.*, 2 Cir. 1949, 175 F.2d 77, 80. The draftsmen of the Federal Rules of Evidence, therefore, deliberately placed former testimony in the category of exceptions to the hearsay rule conditioned on unavailability of the declarant. "[O]pportunity to observe demeanor is what in large measure confers depth and meaning upon oath and cross-examination . . . [T]he tradition, founded in experience, uniformly favors production of the witness if he is available". Advisory Committee Notes, Rule 804 (1975). *See also United States v. Mathis*, 5 Cir. 1977, 559 F.2d 294, 298–99; *United States v. Lynch*, 1974, 163 U.S.App.D.C. 6, 499 F.2d 1011, 1022–1025. Thus, "former testimony" is admissible into evidence under the Federal Rules only upon a showing by the proponent of the statement that he has been "unable to procure the attendance" of the declarant "by process or other reasonable means". Rule 804(a)(5).[3] Because the prosecution concedes that it made no effort at all to secure the return of Molineaux and Segolo to the Canal Zone for the trial, the former testimony of the two witnesses was inadmissible under the Federal Rules of Evidence. ·

Hearsay, inadmissible under the Federal Rules, may be introduced into evidence, nevertheless, if it qualifies under special statutory exceptions enacted by Congress. Federal Rules of Evidence, Rule 802 (1975).[4] Like Rule 15 of the Federal Rules of Criminal Procedure, which governs the admissibility of depositions in the federal courts, two Canal Zone codal provisions specifically regulate the use of depositions and former testimony at trial. But unlike Rule 15, the Canal Zone provisions do not adopt the definition of unavailability found in Rule 804(a) of the Federal Rules of Evidence. Section 3507 of the Canal Zone Code of Criminal Procedure permits the government to introduce the deposition of a witness who was examined at a preliminary hearing "upon

---

1. *See* Federal Rules of Evidence, Rule 1101 (1975).

2. Rule 804(b)(1) provides:
 (b) Hearsay exceptions.—The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
 (1) Former testimony.—Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.
 Federal Rules of Evidence, Rule 804 (1975).
 Most commentators and codifications agree with this classification of preliminary hearing testimony as hearsay. *See, e. g.*, McCormick, Law of Evidence § 254 (2d ed. 1972); Morgan, Basic Problems of Evidence § 254 (2d ed. 1972); Uniform Rules of Evidence § 63(3); Calif. Ev. Code §§ 1291, 1292. *But see* 5 Wigmore, Evidence § 1370 (Chadbourne ed. 1974).
 On preliminary hearing testimony generally, see Falknor, *Former Testimony and the Uniform Rules: A Comment*, 38 N.Y.U.L.Rev. 651 (1963); Comment, *Requirements for Unavailability of Witness in Criminal Case Under the Federal Laws of Evidence*, 29 Rutgers L.Rev. 133 (1975).

3. Rule 804(a)(5) provides:
 (a) Definition of unavailability.—"unavailability as a witness" includes situations in which the declarant—
 (5) is absent from the hearing and the proponent of his statement has been unable to procure his attendance (or in the case of a hearsay exception under subdivision (b)(2), (3), or (4), his attendance or testimony) by process or other reasonable means.
 A declarant is not unavailable as a witness if his exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of his statement for the purpose of preventing the witness from attending or testifying.
 Federal Rules of Evidence, Rule 804 (1975).

4. Rule 802 provides:
 Hearsay is not admissible except as provided by these rules or by other rules adopted by the Supreme Court pursuant to statutory authority or by Act of Congress.
 Federal Rules of Evidence, Rule 802 (1975).

its being satisfactorily shown to the court that he is dead or insane or *cannot with due diligence be found within the Canal Zone . . .*" 6 C.Z.C. § 3507 (1963) (emphasis added).[5] In addition, section 3507 incorporates by reference the provisions of Chapter 217 of the Canal Zone Code of Criminal Procedure. Section 4301 of that chapter provides that the prosecution or the defendant may read into evidence the deposition of any witness, prepared at a preliminary examination because the witness is about to leave the Canal Zone, "upon its appearing that the witness is unable to attend, by reason of his death, insanity, sickness or infirmity, or of his *continued absence from the Canal Zone*". 6 C.Z.C. § 4301 (1963) (emphasis added).[6]

The defendants urge us to strike down these two statutory exceptions to the hearsay rule. They argue that the standard of unavailability set forth in sections 3507 and 4301—absence of the witness from the Canal Zone at the time of trial—falls short of the constitutionally acceptable minimum protection to the accused under the confrontation clause of the Sixth Amendment.

The defendants rely on *Barber v. Page*, 1968, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255, for the proposition that the prosecution must make efforts to produce witnesses from outside the territory of the Canal Zone before it can introduce an out-of-court statement against an accused at trial. In *Barber*, the state introduced recorded statements of a witness who, at the time of trial, was serving a federal sentence in another state and, thus, not subject to the state's ordinary subpoena powers. The Supreme Court reversed, holding that the state must make a "good-faith effort" to use all feasible means, including requests for cooperation from sister states and offers of free transportation, to produce the witness in person. Moreover, even older authorities holding that the state had no obligation to produce the declarant in person unless he was present within the territory merely reflected the theory that "the process of the trial court is of no force without the jurisdiction, and the party desiring his testimony is therefore helpless." 5 Wigmore, *Evidence* § 1404 (3d ed. 1940), *quoted in Barber v. Page*, 390 U.S. at 723, 88 S.Ct. at 1321.[7]

**5.** Section 3507 provides in full:
§ 3507. Right to produce and be confronted with witnesses; depositions; prior testimony
In a criminal action the defendant is entitled to produce witnesses on his behalf and to be confronted with the witnesses against him, in the presence of the court, except that:
(1) the deposition of a witness may be read, upon its being satisfactorily shown to the court that he is dead or insane or cannot with due diligence be found within the Canal Zone, in cases wherein the charge has been preliminarily examined before a committing magistrate and the testimony taken down in question and answer form in the presence of the defendant who has either in person or by counsel cross-examined or had an opportunity to cross-examine the witness;
(2) the testimony on behalf of the government or the defendant of a witness who is deceased, insane, out of the jurisdiction, or who cannot with due diligence be found within the Canal Zone, given on a former trial of the action in the presence of the defendant who has either in person or by counsel cross-examined or had an opportunity to cross-examine the witness, may be admitted;
(3) a deposition may be used as provided by chapter 217 of this title; and

(4) hearsay evidence may be admitted under an exception to the hearsay rule prescribed by section 2962 of Title 5, other than exception (3) therein relating to depositions and prior testimony, unless the court finds that the admission of such evidence would violate the traditional right of a defendant in a criminal action to be confronted with the witnesses against him. 76A Stat. 498.
Canal Zone Code of Criminal Procedure, 6 C.Z.C. § 3507 (1963).

**6.** Section 4301 provides in full:
§ 4301. Use of deposition in evidence
The deposition, or a certified copy thereof, may be read in evidence by either party on the trial, upon its appearing that the witness is unable to attend, by reason of his death, insanity, sickness or infirmity, or of his continued absence from the Canal Zone. Upon reading the deposition in evidence, the same objections may be taken to a question or answer contained therein as if the witness had been examined orally in court. 76A Stat. 525.
Canal Zone of Criminal Procedure, 6 C.Z.C. § 4301 (1963).

**7.** *See also Mancusi v. Stubbs*, 1972, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293. In *Mancusi*, the Court explained that a state need not make

Because the process of the federal district court extends beyond the territory of the Canal Zone, the defendants argue that the Code's statutory exception cuts deeply into the right of the accused to compel the state to produce witnesses whose statements are used against him at trial. The government argues, in turn, that Canal Zone codal provisions, in fact, do require the prosecution to make a good faith effort to bring the absent witness into the jurisdiction. In any event, the government asserts, the mere fact that this requirement may not be expressly stated in the two statutes do not render them constitutionally defective; rather, the statutes must be construed against the background of the Supreme Court's explication of the confrontation clause.

Curiously, both the appellants and the appellee are in agreement that the Canal Zone's statutory exception to the hearsay rule must condition the admissibility of former testimony, like Rule 804, on the good-faith effort of the prosecution to produce witnesses from outside its territory to survive a confrontation-clause attack. Recent statutory developments in the Canal Zone suggest the power and desirability of securing the attendance of witnesses who are outside the territory. Both Rule 17(e) of the Federal Rules of Criminal Procedure, which provides for service of a subpoena upon a witness at any place within the United States, and the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings are in force in the Canal Zone.[8] *Cf.*

*Government of Virgin Islands v. Aquino*, 3 Cir. 1967, 378 F.2d 540. Either of these statutes could have been utilized in this case since the record discloses that at least one of the witnesses, Mr. Segolo, resides in New York. It is plausible, therefore, to suppose, as does the government, that exhaustion of these readily available legal means to produce witnesses is an implicit aspect of the statutory requirement that the prosecution exercise "due diligence" to find the witness in the Canal Zone.

Yet, the structure of the Canal Zone Code suggests that these provisions were intentionally drafted to relieve the government of any obligation to attempt to produce the declarant in person, including the obligation to resort to the full scope of the subpoena power, in the case of preliminary hearing testimony, unless the witness is present within the territory. For one thing, the preliminary hearing testimony was originally perpetuated on the authority of an unusual Canal Zone provision for the taking of depositions in criminal suits by the government. In addition to adopting a version of Rule 15 of the Federal Rules of Criminal Procedure, which in its unmodified form carefully limits the right of the prosecution to depose witnesses to occasions of exceptional necessity,[9] the Canal Zone Code of Criminal Procedure provides a blanket authority to the government to examine conditionally and depose any witness "about to leave the Canal Zone". 6 C.Z.C. §§ 4291–4300. The Official Comments to the Code[10] observe that this special type of deposition is desirable in the Canal Zone in view of the

---

efforts to produce a witness that are clearly likely to fail, as in the case of a witness who resides permanently in Sweden and is not subject to the state's own process or to established procedures of voluntary cooperation. The Court's opinion does not retreat from the test of *Barber*; rather, it purports to apply that test to the facts before it.

**8.** *See* 6 C.Z.C. §§ 4231–4237 (1963), which adopts Rule 17 of the Federal Rules of Criminal Procedure with some modifications, and 6 C.Z.C. §§ 4331–4334 (1963), which adopts the provisions of the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings.

**9.** *See also* 18 U.S.C. § 3503(a) (1970), which authorizes the prosecution to take depositions when the Attorney General certifies that the defendant is involved in organized crime. The relationship of the availability rules for Rule 15, § 3503, and preliminary hearing testimony in the federal courts is debated in *United States v. Lynch*, 1974, 163 U.S.App.D.C. 6, 499 F.2d 1011, 1024 n.12, 1036–38.

**10.** *See* Canal Zone Code, Equity Publishing Corp. (1963) and Supplements (1977) prepared under the supervision of the Governor of the Canal Zone pursuant to statutory authority. 1 C.Z.C. § 3 (1963).

distance of the Canal Zone from the continental United States. Indeed, the Canal Zone Code specifies that when depositions are taken on the authority of Rule 15 of the Federal Rules of Criminal Procedure, they may be used in the Canal Zone at a trial "if it appears that the witness is out of the Canal Zone, unless it appears that the absence of the witness was procured by the party offering the deposition". 6 C.Z.C. § 4271(c). The Official Comments make clear that this rule applies even though the federal district court has the power to subpoena witnesses residing anywhere within the United States. Thus, Section 4301, which states that preliminary hearing depositions may be used at trial when the witness continues to be absent from the Canal Zone, may express the view of Congress that the unique situation in the Canal Zone justifies this less stringent standard of unavailability.

Nor did the draftsmen of the Canal Zone Code envision that the availability requirement embodied in these provisions would be construed against the background of the varying requirements of the Sixth Amendment right of confrontation. Although the right of confrontation is generally guaranteed an accused by the Canal Zone "Bill of Rights", 1 C.Z.C. § 31(7)(C), the statute specifically exempts section 3507 (and, by reference, section 4301) from the coverage of the guarantee.[11] In turn, section 3507 provides that evidence may be admitted under exceptions to the hearsay rule only if the right of confrontation is satisfied, but specifies that in the case of former testimony and depositions, where there has been an opportunity to cross-examine at the preliminary examination, hearsay evidence may be admitted without regard to the statutory right of confrontation.[12]

■ We have never held that the Sixth Amendment to the Constitution is in force in the Canal Zone. *See Kemp v. Government of Canal Zone*, 5 Cir. 1948, 167 F.2d 938.[13] The United States occupies but does not own the Canal Zone; Canal Zone government is statutory and not constitutional. As a rule, therefore, the provisions of the Constitution do not apply of their own force. *McConaughey v. Morrow*, D.C. C.Z.Bal.Div.1922, 3 C.Z. 377, *aff'd*, 5 Cir., 279 F. 617, *aff'd*, 263 U.S. 39, 44 S.Ct. 78, 68 L.Ed. 153; *Canal Zone v. Coulson*, S.Ct., C.Z. 1907, 1 C.Z. 50, writ of error dismissed for want of jurisdiction, 212 U.S. 553, 29 S.Ct. 685, 53 L.Ed. 650; *cf. United States v. Husband R. (Roach)*, 5 Cir. 1971, 453 F.2d 1054. The right of confrontation is a fundamental requirement for a fair trial. *Pointer v. Texas*, 1965, 380 U.S. 400, 405, 88 S.Ct. 1065, 13 L.Ed.2d 923. We should, therefore, read this right as implicit in congressional legislation dealing with trials in a territory not incorporated into the United States. *Cf. Rivera v. Government of Virgin Islands*, 3 Cir. 1967, 375 F.2d 988, 990–91. Nevertheless, it is unclear whether the rule that the prosecution must attempt to produce witnesses from outside the jurisdiction by process or other means is fundamental to the right of confrontation.

It is true that the confrontation clause was historically viewed as a bulwark against the use of depositions or ex parte affidavits, so that the accused "has an opportunity, not only of testing the recollection and sifting the conscience of the witnesses, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor whether he is worthy of belief". *Mattox v.*

11. Section 31(7)(C) provides in full:
 § 31 Rights and guarantees
 The principles of government enumerated below, that are essential to the rule of law and the maintenance of order, have applicability and force in the Canal Zone:
 (7) In criminal prosecutions, the accused has the right to:
 (C) except as provided by section 3507 of Title 6, be confronted with the witnesses against him; . . . 76A Stat. 2.

 Canal Zone Code of Personal and Civil Rights, 1 C.Z.C. § 31 (1963).

12. *See* note 5 *infra*.

13. In *Kemp*, we noted that the Sixth Amendment "is probably not in force in the Canal Zone." 167 F.2d at 940 n.1.

*United States,* 1895, 156 U.S. 237, 242–43, 15 S.Ct. 337, 39 L.Ed. 409. More recent Supreme Court authorities state, however, that cross-examination is the essential right secured by the confrontation clause. *Dutton v. Evans,* 1970, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213; *California v. Green,* 1970, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489; *Douglas v. Alabama,* 1965, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934. Language in these decisions suggests that what was once two separate purposes of the confrontation clause, cross-examination and the production of witnesses, have now become one, implying that the core right protected by the confrontation clause is satisfied when the evidence admitted at trial was subject to cross-examination or otherwise reliable, and the absence of the witness was not procured by the government.[14] Moreover, necessity has long been a factor in confrontation clause analysis. "[G]eneral rules . . ., however beneficient in their operation and valuable to the accused, must occasionally give way to considerations of public policy and the necessities of the case". *Mattox v. United States,* 1895, 156 U.S. 237, 243, 15 S.Ct. 337, 39 L.Ed. 409.

■ We consider that it is appropriate to express these views on the constitutionality of an exception to the hearsay rule in the Canal Zone for former testimony conditioned on the showing that the witness is absent from the jurisdiction. It is clear to us from the record, however, and, indeed, the government concedes in its appellate brief, that the prosecution did not meet even the minimal statutory requirements. The only showing of unavailability made by the prosecution was contained in a statement to the court that the two victims were tourists scheduled to depart the Canal Zone by ship on November 7, the day after the assault. We do not know where the witnesses were two months later at the time of trial. Indeed, for all the prosecution knew, they might very well have been in the Canal Zone. There is testimony in the record indicating that Molineaux was familiar with the area. One may fairly infer from the record of the preliminary examination, moreover, that the prosecution never intended to call Segolo and Molineaux as witnesses, perhaps because their testimony was considerably weaker than that of the officers and would have cast a doubt on the prosecution's case. We hold, therefore, that the former testimony of Molineaux and Segolo was illegally admitted into evidence under both the Canal Zone Code and the Federal Rules of Evidence.

### III.

Although the government concedes error, it urges, nevertheless, that the use of these hearsay statements at a bench trial, without objection by the defendants, was not plain error justifying reversal. *See* Federal Rules of Evidence, Rule 103(d); Federal Rules of Criminal Procedure, Rule 52(b). The government argues primarily that the statements were tested by cross-examination at the preliminary examination; hence, they were trustworthy and their admission into evidence could not have substantially prejudiced the defendants by denying them a fair trial. The government points out that the Supreme Court in *Dutton v. Evans,* 1970, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213, testing the admission of hearsay statements under the confrontation clause, sus-

---

**14.** The Supreme Court's recent decisions have generated substantial controversy among commentators on whether the availability aspect of confrontation clause analysis reflects a prophylactic rule or a strict rule of preference. Professor Martin has argued that after *California v. Green,* 1970, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489, unavailability is no longer required under the confrontation clause for the admission of former testimony. Martin, *Former Testimony Exception In the Proposed Federal Rules,* 57 Iowa L.Rev. 547, 554 (1972). Professor Westen takes the position that the Supreme Court's recent cases can be explained as supporting an interpretation of the confrontation clause as a "preferential rule" that requires the prosecution to produce its evidence in the form of direct testimony but that permits introduction of the evidence in some less reliable form where the state itself is not responsible for the absence of the witness. Westen, *Confrontation and Compulsory Process: A Unified Theory of Evidence for Criminal Cases,* 91 Harv.L.Rev. 567, 601 n.99. *See also Dutton v. Evans,* 1972, 400 U.S. 74, 95–96, 91 S.Ct. 210, 27 L.Ed.2d 213 (opinion of Justice Harlan).

tained a conviction even though the prosecutor neglected to show why the declarant was not called to testify, when the hearsay carried strong indicia of reliability. *See also Mancusi v. Stubbs*, 1972, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293. To support the contention that the testimony of Segolo and Molineaux bore the requisite indicia of reliability, the government relies on language in *California v. Green*, 399 U.S. 149, 165–66, 90 S.Ct. 1930, 26 L.Ed.2d 489, suggesting that testimony subject to cross-examination at a preliminary hearing provides a satisfactory basis for evaluating the trustworthiness of hearsay statements.

 There are, of course, several factual distinctions between the circumstances presented in the case before us and those presented to the Court in *Dutton* and *Green*. In *Dutton*, the hearsay testimony introduced by the prosecution was "of peripheral significance at most". The hearsay was introduced by one of twenty witnesses for the prosecution; it was neither "crucial" to the prosecution's case nor "devastating" to the accused. 400 U.S. at 87, 91 S.Ct. 210. In *Green*, the witness was actually at the trial. Moreover, the Court emphasized that it was not placing its imprimatur on the use of all preliminary hearing testimony. The Court concluded, rather, that in the circumstances of the case before it, the defendant's attorney was not significantly limited in the scope or nature of his cross-examination. 399 U.S. at 166, 90 S.Ct. 1930. But, even assuming that the statements of Molineaux and Segolo were sufficiently trustworthy to satisfy the demands of the confrontation clause, we cannot accept the government's suggestion that violations of the hearsay rule do not constitute plain error unless they amount to constitutional error. Constitutional error can, on occasion, be harmless. *See Dutton v. Evans*, 1970, 400 U.S. at 92–93, 91 S.Ct. 210 (concurring opinion of Justice Blackmun); *Chapman v. State of California*, 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. And error that falls short of constitutional error may be extremely damaging to the accused. Moreover, although both the confrontation clause and the hearsay rule are concerned

with the reliability of evidence introduced at trial, the Supreme Court has cautioned that the two principles are not congruent. *See California v. Green*, 1970, 399 U.S. at 155, 90 S.Ct. 1930.

"[I]n terms of evidentiary reliability the confrontation clause merely establishes a constitutional minimum as to the character of the criminal process; the constitutional requirement focuses solely upon the right of the accused to confront and probe each of his accusers—a narrow adversary activity. In contrast, the hearsay rule, while subject to the constitutional guarantee, also reflects a variety of additional evidentiary judgments by . . . a legislature concerning what types of evidence will be accepted in judicial proceedings."

The Supreme Court, 1969 Term, 84 Harv.L. Rev. 1, 113 (1970).

 Defendants have a right to insist on procedural rights which Congress or the Supreme Court exercising its rule-making power have given them. And when denial of these rights seriously affects the course of a trial, appellate courts will consider objections raised for the first time on appeal. *United States v. Morales*, 5 Cir. 1973, 477 F.2d 1309, 1315–16; *United States v. Freeman*, 1975, 169 U.S.App.D.C. 73, 514 F.2d 1314; *United States v. Bryant*, 2 Cir. 1973, 480 F.2d 785. We are especially sensitive to this role in criminal cases such as the one before us in which the defendants were represented by a series of court-appointed attorneys. *See Logan v. United States*, 5 Cir. 1951, 192 F.2d 388. On the record in this case, the statements of Molineaux and Segolo illustrate well the wisdom of the traditional hearsay rule.

*A. Prejudice to Rouse.*

 Molineaux and Segolo were deposed long before the defendant Rouse was arrested. He was not present at the preliminary examination and, of course, had no opportunity to cross-examine the witnesses himself or to have the benefit of an attorney. The reliability of preliminary hearing

testimony is not assured by the mere fact of cross-examination but only by cross-examination designed to illuminate the accuracy of the statement as it concerns the particular defendant. Cross-examination at the preliminary hearing by Yanez's attorney was not an acceptable substitute. Both Rule 804(b)(1) of the Federal Rules of Evidence and section 3507 of the Canal Zone Code make clear that in a criminal case, cross-examination must be conducted by the party against whom the evidence is admitted. Even for civil cases, the draftsmen of the Federal Rules rejected the theory that subjecting testimony to the questioning of a person who is not a party at the trial, although he has a like motive and interest, will furnish a guarantee of trustworthiness equal to that of cross-examination by the one against whom the evidence is introduced. Furthermore, although Yanez and Rouse were jointly represented at the trial, the strategy adopted by Yanez's attorney at the preliminary hearing was directly opposed to the interests of Rouse. During cross-examination, counsel for Yanez attempted to cast doubt on his client's participation in the offense by postulating that a second man was the assailant. For example, in response to questions by the defense attorney, Segolo, who at first had identified Yanez as the man who pushed him to the ground, agreed that a second man assaulted him.

To be sure, Yanez's attorney was able to question Segolo and Molineaux. We accept as obvious that Segolo and Molineaux had no reason to fabricate the involvement of a second assailant. But Yanez's attorney could not and, indeed, did not wish to test the declarants' capacity to perceive whether a second assailant was involved in the offense or whether their statements on that subject accurately reflected what they were thinking. *See generally* Morgan, *Hearsay Dangers and the Application of the Hearsay Concept*, 62 Harv.L.Rev. 177–78, 185–88 (1948). The trier of fact could have profited from cross-examination of such ambiguous remarks by Segolo as ". . . I say somebody else. He could have done it. No, its impossible, ain't it? Somebody else

grabbed me by the neck." Segolo's live testimony, and cross-examination by Rouse, could have helped significantly to assure that the declarant actually perceived a second assailant and was not merely reacting to the suggestions of Yanez's attorney.

We cannot credit the government's suggestion that Rouse, since he was never identified by the victims, was not harmed by this testimony. The damaging quality of the hearsay lies in its implication that someone else in league with Yanez, identified at trial as Rouse, was involved in the robbery attempt and committed certain criminal acts. These statements lent great weight to the testimony of the two officers. The defense attorney mounted a strong attack on the officers' identification of Rouse, from a moving car at some distance from the tourists, as the man who picked Molineaux's pocket. We are left with the impression from the record that, without these statements, the trier of fact might well have concluded that the officers' identification of the second assailant was based solely on having seen him talk to Yanez immediately before the assault. The prosecution's introduction into evidence against Rouse of preliminary hearing testimony without affording him an opportunity to cross-examine or of showing why the declarants were unable to testify at trial was a serious violation of the hearsay rule. We believe that the case against Rouse was not strong enough without this hearsay to prove guilt beyond a reasonable doubt.

### B. Prejudice to Yanez.

The statements of Molineaux and Segolo had disastrous consequences for Yanez; they directly identified him as one of the assailants. The record reflects that this testimony was a substantial factor in the decision of the trier of fact that the defendant was guilty. In a colloquy with the defense attorney at the close of trial, the court quoted several passages from the preliminary hearing testimony to refute the suggestion of the defense that the identity of Yanez as a participant in the crime was in doubt. Yet, the declarations contained

numerous ambiguities suggesting that in reality neither Segolo nor Molineaux had seen Yanez's face until he was arrested by the police officers.

It is true that Yanez had an opportunity to cross-examine, through his attorney, the two witnesses at the preliminary hearing. But this opportunity was a poor substitute for cross-examination at trial. As a general rule, preliminary hearings provide an occasion for a "much less searching exploration" into the witness's perception and memory. *See Barber v. Page*, 1968, 390 U.S. at 725, 88 S.Ct. 1318. In the case before us, other factors contributed to the inherent limitations on Yanez's attorney to cross-examine the witnesses. He had only fifteen minutes in which to consult with the defendant before the hearing began and could not seek his advice during the hearing because the testimony was rendered in English, a language that the defendant does not understand.

The live testimony of these two declarants, with cross-examination at trial, was important to clarify the ambiguities and conflicts in the depositions. If the prosecution had shown that Molineaux and Segolo were in fact unavailable to testify at the trial, notwithstanding good faith efforts to obtain their attendance, we would then face a different question. Considerations of elemental fairness, however, demand that we prevent the substitution of prejudicial and less reliable hearsay testimony for live testimony and a full opportunity to cross-examine when the prosecution has not shown that the declarants are unavailable. We hold that, in the circumstances of this case, it was plain error to admit the preliminary hearing testimony of Molineaux and Segolo.

The convictions of Rouse and Yanez must be reversed and the case remanded to the district court for a new trial.

REVERSED AND REMANDED.